**UNION PAC. R. CO. v. UNITED STATES.**

**No. 49168.**

The United States Court of Claims.

Decided Nov. 7, 1950.

Lawrence Cake, Washington, D. C., for plaintiff. Raymond A. Negus, Washington, D. C., on the brief.

Lester C. Dibble, Mason City, Iowa, with whom was Asst. Atty. Gen., H. G. Morison, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

MADDEN, Judge.

The question is the proper classification for railroad freight charge purposes of a commodity known as Napalm, or Napalm Thickener, a powder developed at the beginning of World War II for use as a thickening agent for gasoline, to make a mixture to be used in incendiary bombs and flame throwers. The plaintiff carried a quantity of Napalm for the Government, and in making up its frieght bill, classified Napalm as Chemicals noibn, the added letters meaning "not otherwise indexed by name and not more specifically provided for in this classification." The Government, in paying its bill, classified the Napalm as Soap Powder, which, in the freight rate schedules in force at the time, carried a lower freight rate than Chemicals noibn. The plaintiff sues for the difference.

Consolidated Freight Classification No. 16, in effect at the pertinent time, contained among its many other headings, a general heading "Chemicals" under which were listed 434 separate items, filling 13 pages. One of these items was No. 10515, Chemicals noibn, obviously a residuary item to cover commodities not thought of, or perhaps not existing, at the time the lists of specific things were made up, or if known, perhaps not important enough to deserve a specific listing. The rate specified for Chemicals noibn, when applied to all the different things that might, for want of a specific listing, be called chemicals, in this age of chemistry, would of course apply with great inequity to the shipper or to the carrier, depending upon whether the "chemical" was inert, harmless, and not easily damaged, like a plastic in bulk, or was dangerous like an acid or a caustic, or unusually valuable like nylon stockings or dresses. One would think, then, that any fairness which might exist in the application of the Chemicals noibn rate to any particular shipment would be purely coincidental. That would be a reason for avoiding the application of that classification, if another fairly applicable one is available.

Napalm is, of course, a chemical. But it is a chemical only in the widest generic sense, in which neither the man in the

street **or** in industry would think of using the term chemical. It is a "chemical" in exactly the same sense that a bar of washing soap or a box of soap flakes is a chemical. It and they are made by chemical processes, exactly the same chemical processes, down to the last stage when the aluminum sulphate is added to make Napalm. So the washing soap, if not more specifically covered by another classification, could as readily be classified as Chemicals noibn as could Napalm. In both cases, the name would, in one sense, fit the subject, but, in both cases the fit would be so loose that it would not help to identify the subject.

█ A sound principle in the application of scheduled freight rates to particular commodities is that if, though either of two or more classifications would fit the commodity in question, one of them fits it better than the other or others, that one will be applied. United States v. Gulf Refining Co., 268 U.S. 542, 45 S.Ct. 597, 69 L.Ed. 1082; Atchison, Topeka & Santa Fe Railway Company v. United States, 74 Ct.Cl. 154. Does, then, the classification "Soap powders" or possibly "Soap noibn other than liquid" urged by the Government in the alternative fit Napalm better than "Chemicals noibn?" From what we have said it is apparent that in our view these classifications, if they fit Napalm at all, could hardly fit it worse than "Chemicals noibn." And that is, indeed, the question, whether Napalm is soap. If it is, the soap powder classification would seem to fit it quite perfectly, since it is a powder. If it is not soap, then the soap classification does not fit.

To the man in the street, the housewife, the grocery clerk, Napalm is not soap. Neither are any of the other combinations used in industry which, like Napalm, contain all the ingredients of what everyone would call soap, but which have been rendered insoluble in water and therefore useless for washing, by the addition of lead, copper, manganese, chromium, or aluminum. But to chemistry which devises these combinations, and to industry which uses them at the rate of hundreds of millions of pounds a year, these commodities are "soap." The listing in Thomas Register of American Manufacturers, as shown in Finding 10, of the manufacturers of these products as manufacturers of soap, and then its further listing of them showing just what type of soap each one makes, seems to us to show how the word is used in industry. And it is the industry, and not the housewife or the man in the street or the grocery clerk, which is concerned with freight classifications and rates.

It should be noted that, in Consolidated Freight Classification No. 16, here pertinent, several nondetergent soaps are listed under the general heading "Chemicals." That indicates that the makers of the schedules did not think of them as soaps. But since they were given the same freight rates as washing soaps, the industry would have had no reason to object to their misnaming. But the industry, and the Government, as a shipper of an unlisted product such as Napalm, similar in all respects relevant to freight charges to the commodities listed by name, would have good reason to object to being charged higher freight rates by having its soap called a "chemical" and then placed in the "Chemicals noibn" classification.

█ We conclude that the plaintiff has been fully paid, on the basis of the freight classification schedules when properly applied.

The plaintiff's petition will be dismissed. It is so ordered.