Howell, Judge,
delivered the opinion of the court:
This is an action to recover sums alleged to be due plaintiff, a common carrier by railroad, for transportation charges on a number of shipments of articles carried for the defendant in 1945 from various points in the United States and Canada to other points in the United States. The charges were billed by plaintiff on the basis of classification of the articles as “Bombs or mines” under Item 1820 of Consolidated Freight Classification No. 16,[1] and were originally paid by defendant as billed.
Subsequently, upon audit of the bills by the General Accounting Office, overpayments were determined on the ground that the articles shipped were not in fact complete in the parts essential to their functioning as “incendiary bombs” within the meaning of Items 1800 and 1820 of Consolidated Freight Classification No. 16, and that as the articles were not specifically classified by name, charges should have been billed on the basis of rating them as “Combination Articles” under Classification Bule 18.[2] The resulting overpayments so *392 determined were deducted from other sums due plaintiff.
Plaintiff contends that the transportation charges on the articles shipped were correctly billed on the basis of rating them as “incendiary bombs” under Item 182'0 of the Classification. Defendant contends that the articles shipped were not “incendiary bombs,” because they were shipped without bursters and fuzes, which, defendant says, eliminates the most important transportation characteristic of an incendiary bomb. It is defendant’s position that the articles were properly rated by the General Accounting Office as combination articles of the fifth class under Rule 18, but assuming, arguendo, that Rule 18 is inapplicable, the articles are in any event ratable under Rule 17[3] as analogous to dummy bombs or other articles of the fifth class.
The articles carried by plaintiff consisted of two types of bomb bodies described by the symbols M76 and M47 A2, filled with PT1 or NP gels respectively. The M76 is a 500-pound steel bomb body which is filled with PT1 gel, and the M47 A2 is a 100-pound steel bomb body which is filled with NP gel. PT1 and NP, although not self-igniting, are incendiary mixtures, the first being a grayish-black solid which can be briefly, if perhaps not completely accurately, described as a gasoline gel-magnesium mixture, and the latter consisting of a gel of Napalm in gasoline. (See findings 3 (a) and (b) for a more complete and accurate description of the bomb bodies and the gels.)
A completed incendiary bomb, capable of functioning as such in the field, consists of a bomb body filled with inflammable material, such as the PT1 or NP gels, and equipped with a burster and fuze to open the bomb body and scatter and ignite the contents. Absent the burster and fuze, the bomb body filled with gel would not function as an incendi *393 ary bomb. All of the articles involved in this suit were packed and shipped without the fuzes, bursters, or other mechanisms necessary to the operation of the articles as completed incendiary bombs.
The first issue presented is whether the articles shipped without bursters and fuzes are “incendiary bombs” within the meaning of Items 1800 and 1820 of Consolidated Freight Classification No. 16. If this be answered in the affirmative, we need not consider the contentions of the parties as to the application of Eules 17 and 18, for these rules do not apply where there is a specific classification.
At the outset, it should be noted that while this court has no' rate-making functions, Union Pacific Railroad Co. v. United States, 121 C. Cls. 463, 465, the construction and application of published rates and classifications are proper matters for the courts as well as for the Interstate Commerce Commission. Great Northern Railway Co. v. Merchants Elevator Co., 259 U. S. 285. If the question is which of two rates apply, and there is no' contest about the reasonableness of either rate, and the tariffs contain no technical words or phrases employed in a peculiar meaning, the question is not exclusively for the Commission, but is one of which the courts have jurisdiction. Bernstein Bros. Pipe & Machinery Co. v. Denver & R. G. W. R. Co., 193 F. 2d 441.
We are of the opinion that when a steel bomb body, such as the M76 or M47 A2, is filled with an incendiary gel, such as PT1 or NP, it is an incendiary bomb, regardless of whether it contains a burster and fuze. While the absence of the burster and fuze admittedly renders the shipment of the article less hazardous from a transportation standpoint, the only logical description of such an article is as an incendiary bomb. The articles as described on the bills of lading were incendiary bombs without bursters and fuzes, and they had no purpose or use except as incendiary bombs.
The presence or absence of parts essential to the functioning of the articles shipped as completed incendiary bombs does not affect the identity of the articles as such, and it is well settled that in the construction and application of railroad tariffs the absence of essential parts not affecting the *394 identity of tbe thing itself does not alter the fundamental character of the article from a tariff or transportation standpoint. Lakewood Engineering Co. v. New York Central Railroad Co., 259 Fed. 61.
As previously stated, the hazards involved in the transportation of the shipments for which plaintiff is suing were not as great as would have been the case had the articles been shipped fully assembled. And it may well be that a lower tariff rate should apply to the carriage of the less hazardous incendiary bomb. This question is not within our jurisdiction, however, as the question of the reasonableness of rates is a matter entrusted by Congress solely to the Interstate Commerce Commission.
We hold, therefore, that the transportation charges on the shipments in question were correctly billed by plaintiff, and that the deductions made by the General Accounting Office were improper, under the facts of this case.
The parties have stipulated that the judgment of the court may be an interlocutory judgment on the issue of liability, the entry of final judgment to be withheld pending the filing of a further stipulation of the parties.
It is so ordered.
Madden, Judge; Whitakee, Judge; Littleton, Judge; and Jones, Chief Judge, concur.
FINDINGS OF FACT
The court makes findings of fact, based upon the evidence, the report of Commissioner Wilson Cowen, and the briefs and argument of counsel, as follows:
1. The plaintiff, a corporation organized and existing under the laws of the State of Utah, is a common carrier by railroad over its own lines and jointly with other carriers.
2. From May 3 to October 25,1945, inclusive, the plaintiff performed transportation service for the defendant by carrying, on bills of lading issued by the War Department, a number of shipments of articles described as follows:

*395
Bill of lading

(Marion, OMo, to Long Beach, California. WV-7548134 Bombs, Incendiary 500# M76 PT1 W/OUT llGN.
WV-7548131]
7548130 [Marion, OMo, to Long Beach, California. 7548141 fBombs, Incendiary 500# (M76) (PT1).
7548137J
WW-2878257 Ladora, Colorado, to Long Beach, California. Bombs, Incendiary, 100-lb. M47 A2 (NP) w/o Bursters, fuses and wires.
2878196] Ladora, Colorado, to Long Beach, California. 12878195 [Bombs, Incendiary, 100 lb. M47 A2 (NP) 2878210J w/o Booster, Fuze or Wire,
ww rrrvocirwR ÍClover, Utah, to Ladora, Colorado. W VV ^qooqii Fireworks, Bombs, Incendiary, 100# M47 t iojuoi |^2 (NP).a
WW-5374769 Watson Island, B. C., to Clover, Utah. Bombs, Incendiary, 500# PT1 M76 W/O Fuze.
5374742 Bombs, Incend. 500# PT1 M76 W/O Fuze.
5374561 Bombs, Explosive. Bomb, Incend. 500# Size M76 PT1 W/O Fuze.
5374770 Bomb, Incend. 500# PT1 M76 W/O Fuze.
5374579 Bombs, Explosive (Incend. Bomb AN M17 Al) Hardware, NOIBN I or S Combined With Brass, Bronze, or Copper (Wire Arming- Assembly C4).
5374584] Bombs, Explosive. 5374484 [Cluster, Aimable Incend. Bomb AN M17 5374558J A1 (500# Size) W/O Fuze, W/CL Wire.
3. (a) The above articles described by the symbols M76 (PT1) were steel bomb bodies of the type described in War Department Technical Manual TM 9-1980 — “Bombs for Aircraft” — as follows:
Bomb, incendiary, 500-lb., AN-M76, consists of the body for the 500-lb., G. P. bomb modified for field assembly of burster and igniter, and loaded with a gasoline gel-magnesium mixture. As released the bomb weighs 475 pounds, including 180 pounds of incendiary mixture.
The steel bomb bodies were filled with PT1. gel, which is commonly called “Goop” and is described in War Department Field Manual FM 3-6 — “Employment of Air Chemical Munitions” — as follows:
Symbol Name Description and Physiological Effects PT1 Incendiary Grayish-black solid consisting of IM, Mixture PT1 scrap magnesium, oxidizing agent, petroleum distillates, and gasoline. Difficult to extinguish. Burns fiercely and relatively fast. Kate of burning is der pendent upon amount of oxidizing agent.
*396 Symbol Name Description and Physiological Effects IM Incendiary Gel of isobutyl methacrylate polymer Oil IM in gasoline. Burns evenly and is rather easy to extinguish if attacked soon enough.
(b) Tbe above articles described by tbe symbols M47 A2 (NP) were steel bomb bodies of tbe type described in War Department Technical Manual TM 9-1980 — “Bombs for Aircraft” — as follows:
Bomb, incendiary, 100-lb., AN-M47A2, is loaded with a 40-pound charge of gelled gasoline IM or NP. Tbe complete round weighs 69 pounds.
Such steel bomb bodies were filled with NP gel, which is described in War Department Field Manual FM 3-6— “Employment of Air Chemical Munitions” — as follows:
Symbol Name Description and Physiological Effects. NP Incendiary Gel of Napalm in gasoline. Napalm is OilNP mixture of metallic soaps. Properties similar to IM.
(c) All the above articles described by the symbols M76 and M47 A2, consisting of bomb bodies of the types specified, filled with PT1 or NP gel as stated, were packed and shipped without the fuzes, bursters or other mechanisms used to open the bomb bodies and scatter and ignite the contents.
4. The transportation charges on the said shipments were stated and billed by the plaintiff on the basis of classification of the articles shipped as “Bombs or mines” under Item 1820 of Consolidated Freight Classification No. 16, which, with the preceding heading, reads as follows:
1800 Ammunition, Explosive, Incendiary or Gas, Smoke or Tear Producing * * *
*****
1820 Bombs or mines * * *
and were originally paid by the defendant’s disbursing officers as billed.
Subsequently, upon audit of the plaintiff’s bills by the General Accounting Office, overpayments were determined by the General Accounting Office on the shipments made on B/Ls WV-7548134,7548131,7548130,7548141,7548137, WW-2878257, 2878196, 2878195, 2878210, 7789073, 7789081, 5374769, 5374742, 5374561, and 5374770 on the basis that the *397 articles shipped were not in fact complete in the parts essential to their functioning as “Ammunition, Explosive, Incendiary or Gas, Smoke or Tear Producing,” within the meaning of Items 1800 and 1820 of Consolidated Freight Classification No. 16; and, not being specifically classified by name, the overpayments were computed on the basis of applying ratings under the principle of Classification Rule 18 of Consolidated Freight Classification No. 16, which reads as follows:
COMBINATION ARTICLES
When not specifically classified, articles which have been combined or attached to each other, will be charged at the rating for the highest classed article of the combination, and on shipments subject to CL rating the minimum weight will be the highest minimum weight provided for such highest rate or rating.
Upon the basis of Rule 18, the General Accounting Office determined that the rates for the following items of the Freight Classification were applicable to the articles described by the symbols M76 (PT1):
1870 Ammunition, Not Explosive, Incendiary, Gas, Smoke, or Tear Producing:
*****
1895-A Bomb bodies, bomb body parts, noibn, iron or steel, aerial bombs, empty, or aerial bomb cluster adapters, loose or in packages.
* * * * *
36390 Petroleum or Petroleum Products, Including Compounded Oils or Greases Having A Petroleum Base, * * *
*****
36405-A * * *; gasoline, natural; gasoline, noibn; gaso-lines, blended, consisting of motor fuels containing 50% or more of gasoline; * * *
* * * * *
9955 Chemicals :
*****
10515 Chemicals, noibn * * *
In barrels, boxes, steel pails * * *
In the same way, the General Accounting Office determined that the rates for the following items of the Freight Classification were applicable to the articles described by the symbols M47 A2 (NP):
1870 Ammunition, Not Explosive, Incendiary, Gas, Smoke or Tear Producing:
*398 Bomb bodies, bomb body parts, noibn, iron or steel, aerial bombs, empty, or aerial bomb cluster adapters, loose or in packages. # * * * 1895-A
Petroleum ob Petroleum Products, Including Compounded Oils ob Greases Having A Petroleum Base, * * * Hf * * * 36390 *
* * *; gasoline, natural; gasoline, noibn; gaso-lines, blended, consisting of motor fuels containing 50% or more of gasoline; * * * * * * * 36405-A *
Soap, noibn, other than liquid: In * * * pails or tubs * * * or in metal cans completely jacketed * * * 40865
5. The payments made originally on the plaintiff’s bills for the transportation service above described, the over-payments determined by the General Accounting Office, the deductions made from other bills, and the differences between the charges billed and claimed by the plaintiff on the basis of classification of the articles shipped as “Bombs or mines” under Item 1820, and the charges paid by the defendant on the basis of classification as combination articles under Buie 18 of the consolidated freight classification, are set out in detail as follows:
(a) Bill TW 162986. B/L WV-7548134. Marion, Ohio, to Long Beach, California. 1 carload. 500# M76 PT1. Originally paid by DO_$3,301.55 Refunded on request of GAO_ 172. 87 3,128.68
On reaudit, overpayment of $1,557.62 determined by GAO and deducted from carrier’s bill W-230071_ 1,557.62
Net amount paid_ 1,571.06
Charges claimed on basis of rating as bombs under Item 1820 of CPC_$3,269. 36
Paid on basis of rating as combination articles under Rule 18_ 1,571. 06
Amount claimed_ 1,698.30
(b) Bill TW 163419. B/Ls WY-7548131, 7548130, 7548141, 7548137. Marion, Ohio, to Long Beach, California. 4 carloads. 500# M76 PT1. Originally paid by DO_$13,213. 72 Refunded on request of GAO- 136.28 13,077.44
On reaudit, overpayment of $6,793.20 determined by GAO and deducted from carrier’s bill W-233644_ 6, 793.20
Net amount paid. 6,284.24
*399 Charges claimed on basis of rating as bombs under Item 1820 of CPC-$13, 077.44
Paid on basis of rating as combination articles under Rule 18_ 6,284.24
Amount claimed_ 6, 793.20
(c)Bill TW 163687. B/L WW-2878257, 2878196, 2878195, and 2878210. Ladora, Colorado, to Long Beach, California. 4 carloads. 100# M47A2 (NP).
Originally aid by DO_$10,281.25
On audit by GAO overpayment of $5,086.71 determined and deducted from carrier’s bills W-230065 and W-230044_ 5,086.71
Net amount paid_ 5,194.54
Charges claimed on basis of rating as bombs under Item 1820 of CPC_$10,281.25
Paid on basis of rating as combination articles under Rule 18- 5,194. 54
Amount claimed- 5,086. 71
(d)Bill W 179068. B/L WW-7789073 and 7789081. Clover, Utah, to Ladora, Colorado. 2 carloads. 100# M47A2 (NP).
Originally paid by DO_$2,704.95
On audit by GAO overpayment of $1,145.46 determined and deducted from carrier’s bill W-233419- 1,145.46
Net amount paid. 1,559.49
Charges claimed on basis of rating as bombs under Item 1820 of CPC-$2,704.95
Paid on basis of rating as combination articles under Rule 18_ 1,559.49
Amount claimed_ 1,145.46
(e)Bill TW 176131. B/Ls WW-5374769, 5374742, 5374770, and 5374561. 4 carloads. 500# M76PT1. WW-5374579. 5374584, 5374484 and 5374558. 4 carloads. Cluster aimable 500# M17A1. Watson Island, B. C., to Clover, Utah.
Originally paid by DO_$36,921.81
On reaudit, overpayment of $10,968.69 determined by GAO on basis of application of Rule 18 to shipments of PT1 bombs, and classification of cluster aimable bombs (fuzed) under Item 1820, of which $2,162.47 was refunded by carrier and balance of $8,806.22 was deducted from carrier’s bill W-233128_ 10,968. 69
Net amount paid_ 25,953.12
Charges claimed on basis of rating as bombs under Item 1820 of CPC_$34,726. 92
Paid as noted above_ 25, 953.12
Amount claimed_ 8,773.80
6. The parties have stipulated that if the court shall find that the articles in question which moved on the bills of *400 lading mentioned in finding 4 hereof, were “Bombs or mines” as listed in Item 1820 of the Freight Classification under the heading “Ammunition, Explosive, Incendiary or Gas, Smoke or Tear Producing,” or were properly ratable by analogy, under Rule 17, as such, the plaintiff is entitled to recover the undercharges established on the basis stated; that otherwise and if the court shall find that the said articles were “combined or attached” articles under Rule 18 of the Freight Classification as found in the settlements made by the General Accounting Office, or where properly ratable by analogy under Rule 17, as other articles having a rating not higher than 5th class, in that event the deductions made from subsequent bills were correct. The parties have further stipulated and agreed that the reaudit of the accounts in question not having been completed by the General Accounting Office and the exact amount of the undercharges in question determined, the court’s judgment on the submission of the case may be an interlocutory judgment, on the issue of liability, the entry of final judgment to be withheld pending the filing of a further stipulation of the parties.
7. Classification Rule 17 of Consolidated Freight Classification No. 16, in effect at the time of the transactions involved here, provided as follows:
RULE IT-CLASSIFICATION BY ANALOGY
When articles not specifically provided for, nor embraced in the classification as articles “noibn”, are offered for transportation, carriers will apply the classification provided for articles which, in their judgment, are analogous; in such cases agents must report facts to proper officer of Freight Department in order that rating applied may be verified and necessary classification provided.’ This rule will not apply in connection with ratings or rates published in Exceptions to the Classification or in commodity tariffs.
8. The Chemical Corps (formerly the Chemical Warfare Service) of the Department of the Army has produced and is producing bombs to disseminate three basic types of agents: incendiaries, smokes, and toxics. There are many types of bombs within the three classifications, depending upon the specific application. Incendiary bombs are pri *401 marily of the anti-matériel type. They are designed to set fire to inflammable structures such as dwellings and industrial installations.
9. A completed incendiary bomb, capable of functioning as such in the field, consists of a bomb body or shell filled with inflammable material, such as the PT1 or NP gel, and equipped with a burster and fuze to open the bomb body and scatter and ignite the inflammable material. The burster is a steel tube inserted in the nose of the bomb and extending through its center. The burster contains a small central well in which there is inserted a 14-inch column of pelleted tetrol or TNT. The burster tube also contains a column of white phosphorus, which is poured in as a liquid and allowed to solidify. The function of the explosive is to open the bomb case and scatter the contents. The white phosphorous ignites in the air when blasted out by the explosive charge and is the element which ignites the gel. The fuze is a device in the nose of the bomb which, on impact, sets off a primer cap with a small explosion sufficient to fire the burster. The burster and fuze are inserted after the bomb body is filled with gel. The insertion of the burster and fuze is a simple mechanical operation which can be done by an enlisted man in the field and consists merely of screwing in the bursting tube and snapping in the fuze.
10. Although the PT1, NP, and IM gasoline-thickened gels are highly inflammable, they are not self-igniting. A bomb body filled with the gel, but without the burster and fuze, would not function as an incendiary bomb. If a bomb body filled with either the PT1 or NP gel were dropped from an aeroplane, the following results would occur: the M47, which has a thin case, would shatter, and the contents would be scattered over a small area; the M76, which has a much heavier case, would probably not be ruptured if it fell on soft ground. Ignition would not result from the impact, and there would be no change in the chemical composition of the contents of either bomb.
11. The bills of lading covering the shipments made from Marion, Ohio, to Long Beach, California, Nos. WV-7548134, 7548131, 7548130, 7548141 and 7548137, from Ladora, Colo *402 rado, to Long Beach, California, Nos. WW-2878257,2878196, 2878195 and 2878210, and from Clover, Utah, to Ladora, Colorado, Nos. WW-7789073 and 7789081, were stamped with the following certificate:
This is to certify that the above articles are properly described by name and are packed and marked and are in proper condition for transportation according to the regulations prescribed by the Interstate Commerce Commission.
Of the above 11 bills of lading the following were also stamped with the word “Dangerous” in large letters: WY-7548184, 7548181, 7548130, 7548141 and 7548137.
The bills of lading covering the shipments made from Watson Island, B. C., to Clover, Utah, Nos. WW-5374-769, 5374742, 5374561 and 5374770, were stamped with the following certificate:
This is to certify that the above articles are properly described by name and are packed and marked and are in proper condition for transportation according to the regulations prescribed by the Board of Transport Commissioners for Canada.
These bills of lading were also stamped with the word “Dangerous” or the word “Explosives” in large letters.
12. The Bureau of Explosives is an agency of the railroads which enforces regulations of the Interstate Commerce Commission governing the transportation of explosives and other dangerous articles. As part of its duties, the Bureau publishes such regulations in the form of a tariff, which does not purport to classify any articles or commodities for the purpose of assessing charges for their transportation, but merely sets forth the rules which have been approved by the Interstate Commerce Commission for the packing, marking, loading, and handling of certain explosives and other dangerous articles. The regulations in effect in 1945 were published as Agent W. S. Topping’s Freight Tariff No. 4, which in Section 59 provided as follows:
5 9 AMMUNITION, CHEMICAL, EXPLOSIVE
(a) Chemical ammunition used in warfare is all kinds of explosive chemical projectiles, shells, bombs, grenades, *403 etc., loaded with, toxic, tear, or other gas, smoke, or incendiary agents; also such miscellaneous apparatus as cloud-gas cylinders, smoke generators, etc., that may be utilized to project chemicals.
(b) When these articles are shipped assembled with their ignition elements, bursting charges, detonating fuzes, or explosive components they must be shipped in conformity with the regulations prescribed for explosive articles, class A, see sec. 57. For shipment of these articles not containing ignition elements, bursting charges, detonating fuzes, or other explosive components, see secs. 330,342, and 364.
* * * $ *
Section 330 of the tariff, referred to in the above-quoted paragraph, related to the shipment of bombs and shells containing poisonous gases or liquids but not equipped with ignition elements, bursting charges, detonating fuzes, or explosive components. Section 364, also referred to in the foregoing paragraph, related to the shipment of tear gases. Section 342 of the tariff pertained to the transportation of less dangerous poisons, which were defined in Section 336 as follows:
LESS DANGEROUS POISONS — CLASS B — LIQUID-POISON LABEL
(a) Poisonous liquids (including pastes and semi-solids) are substances of such nature that they are chiefly dangerous by external contact with the body or by their being taken internally as in contaminated food or feeds.
(b) The vapors of some of this class of materials are also offensive or dangerous, but to. a much less extent than class A poisons.
Section 342 read as follows:
PACKING
(a) Chemical ammunition consisting of projectiles, shells, bombs, grenades and other containers filled with gases, liquids, or chemicals, class B, without ignition elements, bursting charges, detonating fuzes, or other explosive components, must be packed for shipment in strong outside wooden or metal boxes. Boxes must be marked with name of contents and labeled as prescribed by these regulations for gases, liquids, or chemicals contained therein.
(b) Chemical ammunition, when shipped as such, must not be equipped or packed with explosive or ig *404 nition elements. (See Secs. 55 and 57 for explosive chemical ammunition.)
Although a number of the bills of lading for the shipments involved here were stamped with the words “Dangerous” or “Explosives” (finding 11), there was no provision in Agent Topping’s Freight Tariff No. 4 which required such notations on the bills of lading, nor did the tariff require that the articles be packed or marked as dangerous explosives.
13. During the time of the shipments referred to herein, the War Department had in effect a supply bulletin, No. SB 55-6, which was described as a Freight Billing Guide for the application of the Consolidated Freight Classification to Chemical Warfare Service items. The first page of the bulletin contained the following statement:
This freight billing guide was compiled for the use of Transportation officers and their organizations. The bill of lading descriptions shown herein are to be used in preparing and issuing bills of lading in accordance with paragraph 14c (2), AR 55-150, in order to facilitate settlement of transportation charges.
The bulletin listed bombs of the M76 and M47 types under the heading “Bomb, Incendiary” and included a direction that such bombs should be described on bills of lading as “incendiary bombs” with reference to Consolidated Freight Classification No. 16, Item 1820.
14. The gel with which the M76 and M47 bombs were filled is a very viscous material. The only opening in the bomb bodies is a small hole in the nose, and it would be extremely difficult to remove the gel from the bomb. The gels used in these and other types of bombs are not interchangeable, a special kind of gel being used for each type of bomb, and the bomb bodies themselves are not interchangeable. On one occasion, the Army attempted to recover the gasoline from the gels contained in a quantity of recaptured incendiary bombs. The attempt was not successful, and no process or method has since been developed for separating the gels into gasoline and the original thickening agents. The M47 and M76 bomb bodies when filled with gels, but without the bursters and fuzes, have no purpose or use except as incendiary bombs.
*405 CONCLUSION OF LAW
Upon the foregoing findings of fact, which, are made a part of the judgment herein, the court concludes that as a matter of law the plaintiff is entitled to recover.
Entry of judgment is suspended to await the filing of a stipulation of the parties showing the amount due plaintiff in accordance with this opinion.

 Item 1820, with the preceding heading, is as foUows:
1800 AMMUNITION, Explosive, Incendiary or Gas, Smoke or Tear Producing, * * *
*****
1820 Bombs or mines, * * *

 Rule 18 reads :
COMBINATION AHTICLES
When not specifically classified, articles which have been combined or attached to each other, will be charged at the rating for the highest classed article of the combination, and on shipments subject.to CL rating the minimum weight will be the highest minimum weight provided for such highest rate or rating.

 Rule 17 reads :
CLASSIFICATION BY ANALOGY
When articles not specifically provided for, nor embraced In the classification as articles “noibn”, are offered for transportation, carriers will apply the classification provided for articles which, in their judgment, are analogous; in such cases agents must report facts to proper officer of Freight Department in order that rating applied may be verified and necessary classification provided. This rule will not apply in connection with ratings or rates published in Exceptions to the Classification or in commodity tariffs.