Dureee, Judge,
dissents. (See dissent following the conclusion of the commissioner’s opinion.)
OPINION OE COMMISSIONER*
Stone, Commissioner:
Plaintiff seeks in this action to recover freight charges involving one shipment of explosive projectiles and 48 shipments of propelling charges for 120-mm antiaircraft guns, without projectiles, which moved over plaintiff’s lines and the lines of other carriers between *229 various points within the United States during the years 1944 and 1945.
After the shipments had been completed, plaintiff, as the final and delivering carrier, billed the transportation charges to defendant who paid them as claimed. Thereafter, following an audit by the General Accounting Office which determined that overpayments of said bills had been made, defendant demanded refunds from plaintiff. Upon plaintiff’s failure to make such refunds, defendant made various deductions from other charges for transportation services owed plaintiff. The earliest of these deductions occurred on July 7, 1959 and the last on November 1, 1961. As a result of defendant’s action in making such deductions, plaintiff timely brought this suit seeking to recover the difference between the rates it considers applicable to the shipments involved herein and the rates applied by defendant.[1] Defendant has counterclaimed for an amount over and above which it claims plaintiff was lawfully entitled to 'be paid for the transportation services performed.
The parties have stipulated that for purposes of this suit, the 49 shipments involved may be divided into five categories. (See finding 4.) With the exception of the one Category 5 shipment (mentioned in findings 4(e), 9, and 10, infra), which was described in the bill of lading as “Explosive Projectiles” and concerning which there is no controversy between the parties with respect to the rate and amount due, all of the shipments, i.e., the 48 shipments in dispute here, were described on the bills of lading therefor as so many boxes of “Smokeless Powder For Cannon.” However, the description was supplemented on the bills of lading by various words and abbreviations indicating that the shipments consisted of propelling charges for the 120-mm antiaircraft gun in the M24 cartridge case, and the commodity shipped was identified by the code designation “P5ULA”, which designation is particularly significant in determining the true identity of the articles shipped. (See finding 10, infra.)
The facts concerning the rates which defendant applied to the several categories of shipments in dispute in computing *230 the freight charges clue plaintiff, and the contentions of plaintiff as to the proper classification of the commodity and the rates that should be applied to the various shipments, are fully set forth in the findings and will not be repeated in detail here. It is sufficient to say, in brief summary, that defendant applied the fourth class rating applicable on “Cartridges, cannon, blank * * published in Item 1835 of Consolidated Freight Classification (CFC) No. 16, issued October 25, 1943, effective December 6, 1943, to the shipments in Categories 1 and 3, and used a combination of said rate and the commodity rate on “Ammunition, fixed, for cannon, * * * without projectiles”, published in Trans-continental Freight Bureau (TCFB) Tariffs 4-U or 4-'V, in computing the charges as to the shipments in Categories 2 and 4.
Plaintiff asserts that the classification and rates applied by defendant to the commodity shipped are inapplicable because the commodity in question did not consist of either “blank” cartridges, or “fixed” ammunition without projectiles. Plaintiff, as discussed in more detail hereinafter, contends that class, exception, and quotation ratings on “smokeless powder” published in TCFB 38-F, TCFB 38-G, and TCFB Section 22 quotation 13A Series, are properly applicable to subject shipments. These rates are higher than those applied by defendant.
The parties have stipulated that if the rates applied by plaintiff for all five categories of shipments are held to be applicable, plaintiff is due the sum of $15,704.30 from defendant; that if the rates applied by defendant for the four categories of shipments in dispute are held applicable, defendant is entitled to recover from the plaintiff the sum of $4,857.02, less $1,314.44 due plaintiff for the shipment in Category 5, or a net amount due the defendant of $3,542.58; and that if the rates sought are held applicable in part and inapplicable in part, the exact amount due one party by the other shall be determined according to Buie 47(c) of the Buies of the Court.
There is no dispute between the parties as to what was actually transported. They agree that the commodity shipped was the propelling charge portion of a round of service ammunition for the 120-mm (4.7 inch) antiaircraft *231 gun Ml, witliout a projectile, consisting of 24 pounds of smokeless powder and a primer, contained in the M24 cartridge case. The primary question to be resolved is the proper classification of the commodity for transportation purposes, the applicable rates being dependent upon such determination.
Plaintiff asserts that in resolving the issues of tariff application involved in the instant case, the pertinent rule of construction is that a tariff, like any other legal document, should be interpreted and applied according to the language used. Plaintiff places a great deal of emphasis on the intended military use of the commodity shipped in identifying it from a strictly ordnance standpoint. Plaintiff argues that Items 1830, 1835, and 16410 of Consolidated Freight Classification (CFC) No. 16, supra, considered together, establish that Item 1835 was not intended to apply to the commodity shipped because the latter item names a Class 4 rating on “Cartridges, cannon, blank.” It is plaintiff’s position that Item 1835 applies only to “blank” cartridges or ammunition; that the commodity shipped did not consist of “blank cartridges for camion”, but rather the propelling charge for a complete round of service ammunition; that the propelling charge was designed and is utilized solely for the purpose of expelling projectiles from 120-mm antiaircraft guns; and that blank ammunition is not used for such purpose but to simulate artillery fire, deliver salutes, and fire the morning and evening gun (a fact with which defendant does not disagree).
Plaintiff argues that the commodity shipped, i.e., the propelling charge, is not “fixed” ammunition because whether ammunition is, or is not, “fixed” depends upon whether the cartridge case is permanently attached to the projectile, or as stated in plaintiff’s brief, “[it] depends upon the relationship between the propelling charge explosive train, and the bursting charge explosive train.”
On the basis of the foregoing, plaintiff concludes that the commodity shipped was neither “blank” ammunition nor “fixed” ammunition, and that it should be classified for transportation purposes as “smokeless powder for cannon” and rated as Class 1. In support of the aforestated position, plaintiff asserts that the propelling charge for 120-mm cannon *232 is not specifically listed in either CFC No. 16 or TCFB Tariffs 4-TJ or 4-V; that the commodity then is a combination of smokeless powder (which bears a Class 1 rating) and a metal cartridge case (which bears a Class 3 rating) ; and that, therefore, the Class 1 rating on smokeless powder applies to the commodity shipped by operation of Rule 18 of CFC No. 16, which rule provides:
COMBINATION ARTICLES
When not specifically classified, articles which have been combined or attached to each other, will be charged at the rating for the highest classed article of the combination, and on shipments subject to CL [carload] rating the minimum weight will be the highest minimum weight provided for such highest rate or rating.
Defendant does not contend that the propelling charge in the cartridge case is “blank ammunition” as such term is used in the military. But defendant does dispute that Item 1835 of CFC No. 16 applies only to articles embraced within the ordnance term “blank ammunition”, and disagrees that the rates applicable to bulk shipments of smokeless powder should be supplied to the commodity shipped.
In summary, it is the position of the defendant that although the commodity shipped was described on the bills of lading as “Smokeless Powder For Cannon”, such description was incorrect; that it is axiomatic in transportation law that the bill of lading description is not controlling, the applicable rule being that the “true nature of the article shipped governs its classification”; that the identity of an article of ammunition from an ordnance standpoint and the intended military use thereof are not determinative of the rate or rating applicable to the commodity; that the documentary material and other evidence of record identifies the commodity shipped, and shows that for transportation purposes it is “Ammunition For Cannon Without Projectile.”
In support of the aforestated position, defendant argues that with respect to certain shipments, the Class 4 rating published in Item 1835 of CFC No. 16 for “Cartridges, cannon, blank” applies to the commodity, since that description is the same as “Ammunition for Cannon Without Projectile,” and that the article shipped is correctly described for trans *233 portation purposes by tbe latter term because it is synonymous witb tbe term “Cartridges, cannon, blank,” or, in other words, that in transportation parlance, these terms mean the same article.
Defendant contends that with respect to certain other shipments, the commodity rates on “Ammunition, fixed, for Cannon * * * without projectiles” are applicable. Defendant argues that the commodity shipped is in fact ammunition for cannon without projectiles; that the commodity is either “fixed” ammunition for cannon without projectile within the meaning of the Commodity Tariff or that the tariff is ambiguous ; and that any ambiguity in the tariff should be resolved in defendant’s favor.
Defendant contends that Rule 18 of the classification known 'as Combination Article Rule, supra, cannot be invoked unless the article being shipped is not specifically classified, and that the rule is not applicable to the commodity shipped as it is specifically classified as “Cartridges, cannon, blank”, which, as noted before, defendant claims is, for transportation purposes, the same as “Ammunition For Cannon Without Projectile.”
Certain technical manuals introduced in evidence give a technical ordnance description of the commodity shipped and refer to an Ordnance Supply Catalog, dated June 10, 1944 (see Defendant’s Exhibit No. 5), in which various items of ordnance are identified under the Ammunition Inspection Code. The code “P5ULA” clearly identifies the commodity in standard ordnance nomenclature as “Charge, propelling (in Case, Cartridge, M24), 120-mm gun Ml.” The catalog indicates that the correct ICO marking required for said article under the Explosives and Dangerous Articles Tariff is “Smokeless Powder for Cannon.” However, the same catalog contains an illustration identified as “Bepresentative marking of packing boxes for 120-mm gun, Ml ammunition,” which shows the marking required by ICC regulations as “Ammunition For Cannon Without Projectile.” Department of the Army Supply Catalog, entitled “Ammunition for Antiaircraft Artillery”, dated February 1951, describes ordnance under the code P5UDA as “Charge, propelling, M15, for 120-mm gun”, and shows that the required ICC *234 marking for said item is “Ammunition for camion without Projectiles.”
It is clear from the foregoing and the testimony presented during the trial, that the Ordnance Supply Catalog, dated June 10, 1944, supra, was in error in stating that the required ICC marking for the commodity under the Explosives and Dangerous Articles Tariff was “Smokeless Powder For Cannon that such designation is used only in connection with shipments of bulk smokeless powder (which is not the case here); and that the correct ICC marking under said Tariff for the article identified by the code P5ULA should have been indicated as “Ammunition For Cannon Without Projectile (s)This is not to say that the aforementioned Tariff governs the rate, but since it was published to guard carriers and the public against improper handling of shipments of explosives, it is helpful as a guide in determining the correct transportation terminology of the commodity as opposed to ordnance terminology thereof.
The identification of the true nature of the commodity shipped is obviously of prime importance because it is the true description of a shipment which governs the rate and a bill of lading description may not defeat the legal rate. See Chicago, Burlington and Quincy RR Co. v. United States, 73 Ct. Cl. 250, 261 (1931), cert. denied 287 U.S. 599 (1932). In identifying the commodity in dispute here for purposes of classification, one is forced to choose between the identity of the commodity from a purely ordnance standpoint, and from a transportation standpoint. In my opinion, the primary use doctrine, as advocated by plaintiff, and as applied by this court in Union Pacific Railroad Co. v. United States, 117 Ct. Cl. 534, 91 F. Supp. 762 (1950), is of no assistance because this case cannot be resolved by merely deciding that the commodity was not intended to be used as “blank” ammunition. The decision must rest on the identity historically ascribed to the commodity by freight classifications and tariffs, and it should be kept in mind that these are published by the railroads — not by the Government.
It is clear from the record that although the articles shipped were described on the bills of lading as “Smokeless Powder For Cannon”, such description was incorrect and did *235 not properly identify the commodity in question for transportation purposes. The commodity was the propelling charge component part of a complete round of service ammunition for the 120-mm antiaircraft gun (cannon), which charge was contained in the M24 cartridge case and admittedly shipped without the projectile, another essential component of the round of ammunition. However, it is well settled that in construction and application of railroad tariffs, the absence of essential parts not affecting the identity of the thing itself does not alter the fundamental character of the article from a tariff or transportation standpoint. Union Pacific Railroad Co. v. United States, 125 Ct. Cl. 390, 111 F. Supp. 266, 268 (1953).[2]
In order to be capable of fmictioning in the field, a complete round of ammunition for the 120-mm gun must consist of the propelling charge, the fuse, the primer, and the projectile. Obviously, absent any of these components, the complete round of ammunition cannot be fired. However, the absence of the projectile during shipment does not render the ammunition as a whole ineffective for its intended use.
The ammunition for the 120-mm gun is considered to be a form of “separate-loading” ammunition known as “separated” ammunition. It is characteristic of separated ammunition that the projectile and the propelling charge therefor are packed and shipped separately, although they are loaded into the gun in one operation. The absence of the projectile from the cartridge case containing the propelling charge portion of the round of ammunition for the 120-mm gun merely reduces the hazard incident to the shipment, but does not alter the true identity of the commodity shipped. It is no less “ammunition for cannon.”
*236 In my opinion, from a strictly ordnance standpoint, the ammunition is neither “blank” nor “fixed”; but for the reasons previously mentioned and hereinafter discussed, the ordnance meaning is not controlling. In short, although the commodity is neither “blank” nor “fixed” ordnance, it does not follow that the identity of the commodity from a military ordnance standpoint is determinative of its classification for transportation purposes.
In order that the plaintiff’s position may be better understood, it is considered advisable to further discuss the evidence of record relating to the question of whether the ammunition involved is “blank” or “fixed.”
BLANK AMMUNITION
In arguing that the commodity shipped is not “blank” ammunition, plaintiff points out the undisputed fact that it consisted of the propelling charge for a complete round of service ammunition for 120-mm cannon, containing 24 pounds of smokeless powder; that, on the other hand, blank ammunition contains from between .87 pounds to 2.0 pounds of black powder per round and was not manufactured for 120-mm cannon during World War II; and that the black powder used in blank ammunition is not suitable for the propelling charge in 120-mm ammunition because of its flash and water-absorbing propensities.
Plaintiff also contends that but for the existence of the 24 pounds of smokeless powder inside the cartridge cases involved in this action, the rates for Item 1830 of CFC No. 16, “Cartridge cases (cartridge shells), cannon, empty, primed, loose or in packages,” would be applicable. Plaintiff seeks to apply to the commodity the meaning generally understood hi the particular trade or industry and resorts to the ordnance “trade” for the meaning of the terms which plaintiff contends only have application in that trade.
Plaintiff further contends that since empty cartridge cases for cannon are rated Class 3 and the rate sought to be applied by the defendant is Class 4, it makes little sense that cartridge cases filled with smokeless powder would be rated at Class 4, a lower rate, when the filler by itself is rated Class 1, a higher rate. Under this reasoning, I do not see how Item 1835 of *237 CFC No. 16, supra, “Cartridges, cannon, blank, loose or in packages” could be considered applicable with respect to any article of ammunition. However, the intent that is the natural and obvious import of the tariff as a whole must control. Southern Pacific Co. v. Lothrop, 15 F. 2d 486, 487 (9th Cir. 1926), cert. denied, 273 U.S. 742 (1927); also Arkansas Pass Channel & Dock Co. v. G.H. & S.A. Ry. Co., 27 I.C.C. 403 (1913), and Pacific Coast Shippers’ Assoc. v. A., C. & Y. Ry. Co., 136 I.C.C. 607 (1928), cited by plaintiff, and the nullification of a part of the tariff, weighs heavily against the acceptance of plaintiff’s position. Southern Pacific, supra, p. 487.
It is my opinion that there is also another and more acceptable basis upon which the applicability of the rates may be determined, namely, that, notwithstanding the meaning of “blank” ammunition as advanced by plaintiff, the rate classifications published by the railroads have long reflected a meaning for that term which is synonymous with “Ammunition for cannon without projectile,” which admittedly is not listed as such in CFC No. 16, supra. An examination of the history and evolution of the term “Cartridges, camion, blank”, named in Item 1835 of CFC No. 16, upon which defendant relies in justification of the rates it applied, confirms the above conclusion.
The predecessors of the term “Cartridges, cannon, blank,” as it appears in Item 1835 of CFC No. 16, are items 12, 14 and 17 of CFC No. 1, issued December 10, 1919, and effective December 30, 1919. At that time the entries were:

Item Articles

12 AMMUNITION, EXPLOSIVE, * * *
❖ * * * *
14 For Cannon:
* * * * *
17 Without Projectiles (Blank Cartridges, metal) : [Emphasis supplied]
CFC No. 1 also provided that the “* * * descriptive terms appearing within parentheses constitute another description of the identical article immediately preceding the parentheses.” Therefore, the descriptive term “Blank Cartridges, metal”, which appears in parentheses next to the *238 entry “ammunition, explosive, * * *: For Cannon: Without Projectiles”, shows that for transportation purposes, “Blank Cartridges, metal” was, at that time, the same thing as “Ammunition, * * *, For Cannon: * * * Without projectiles.”
“Ammunition, Explosive, For cannon: * * * without Projectiles” is also described as “Blank Cartridges, metal” in CFC No. 3, issued October 2, 1922, and effective November 15, 1922, which reads in pertinent part:

Item Articles

9 ammunition, explosive, see Kule 39: For Cannon:
† With empty, sand-loaded or solid Projectiles (Loaded Cartridges) or without Projectiles (Blank Cartridges, metal) : [Emphasis supplied]
The same description is carried over as items 11, 12, and 13 of CFC No. 5, issued October 24, 1927, and effective December 15, 1927.
In Supplement No. 4 to CFC No. 5, issued March 17, 1928, and effective April 30, 1928, items 12, 13, and 14 of CFC No. 5, issued October 24, 1927, were cancelled; but the same language as contained in those items was added in items 19 and 20 of Supplement No. 4, except that the descriptive phrase “Blank Cartridges, metal” and “Loaded Cartridges” no longer appeared. In Supplement No. 4, however, the heading was changed from “ammunition, explosive”, to “ammunition, fixed:”. (The concept of fixed ammunition will be more fully discussed hereinafter under the heading Fixed Ammunition.)
Supplement No. 18, issued December 22, 1928, and effective February 1, 1929, cancelled items 19 and 20 of Supplement No. 4 to CFC No. 5, as well as item 18 thereof, which had described ammunition under the generic heading of “ammunition, fixed.” The Supplement No. 18 classification restored the heading “ammunition, explosive”, and discarded the heading “ammunition, fixed,” although retaining the same description of “ammunition, explosive, * * *: For Cannon: With empty, sand loaded or solid projectiles or *239 without projectiles: * * * ” In CFC No. 6, issued May 1, 1930, and effective June 15, 1930, the same description that appeared in Supplement No. 18 was retained, but the item number designations were changed to items 13, 15, and 16. Supplement No. 24 to CFC No. 6, issued May 31, 1931, and effective July 6, 1931, cancelled items 15 and 16 of Supplement No. 18 and those items were replaced with the following:

Item

Articles

AMMtnsnnoN, explosive, Incendiary or Gas-, Smoke- or Tear-Producing, * * *:
1
For Cannon:
2
Cartridges, blank:
Supplement No. 24 provides that the term “Cartridges, blank” for cannon is a change in wording which results in neither increases nor reductions in charges.
Aside from the tariffs themselves, it is also significant to note that Joint Army and Air Force Commercial Traffic Bulletin No. 16, entitled “Freight Classification Guide”, dated February 13, 1950, which was prepared solely for the use of Government transportation officers in translating Army-Air Force ordnance nomenclature for freight billing purposes, provides that the freight nomenclature for “Charge, propelling (in case, cartridge, M24) 120-mm gun” is “Cartridge, cannon, blank.”
It is clear from the foregoing that, historically, for purposes of freight classification, the term “Cartridge, cannon, blank” has been used to describe and identify “Ammunition for cannon without projectile”; that in freight terminology these terms mean the same thing; and that no significance has been attached to the ordnance meaning of “blank” ammunition. Thus, considering the fact that the commodity shipped is described in technical ordinance terms as “Charge, propelling (in case, cartridge M24) 120-mm gun,” and as “Ammunition for cannon without projectile” in transportation terminology, it is concluded that the commodity is embraced within Item 1835 of CFC No. 16, and that the class rating on “Cartridge, cannon, blank” is applicable to the shipments involved in Categories 1 and 3. Plaintiff argues that the term “Cartridges, cannon, blank” cannot apply to *240 the articles in question since 120-mm ammunition had not been manufactured at the time said term first appeared. While the factual basis for plaintiff’s argument may be true, it is considered significant that Item 1835 makes no reference to size and the conclusion reached by plaintiff is rejected.
FIXED AMMUNITION
Both plaintiff and defendant presented expert testimony in an effort to identify, for transportation purposes, the commodity involved in the shipments here in controversy. Dr. Bernard Lewis testified on behalf of plaintiff and Mr. John Herczogh testified on behalf of defendant. As shown in the findings, both of these men are eminently qualified in the ordnance field, and the latter also is highly qualified with respect to matters involving the transportation of military ordinance. Dr. Lewis and Mr. Herczogh agreed that the commodity shipped is not “blank” ammunition in the military sense and, as stated previously, the record supports such a conclusion. However, they expressed differing views as to whether the commodity is “fixed” ammunition.
As indicated hereinbefore, with respect to the shipments in Category 2 and Category 4, defendant applied a combination of the Class 4 rating published in Item 1835 of CFC No. 16, and the commodity rates of either Item 1606 of TCFB Commodity Tariff 4-U or Item 3200 of TCFB Commodity Tariff 4-V, depending upon which of the two tariffs was in effect at the time of the shipments. Both items read in pertinent part:
Ammunition, fixed, for cannon, with empty, sand loaded or solid projectiles or without projectiles. [Emphasis supplied]
Plaintiff contends that the rates provided in TCFB Tariff 38-F and 38-G apply. The pertinent portion of 38-F reads as follows:
Powder, black, brown or smokeless, in boxes or kegs.
The pertinent portion of 38-G reads as follows:
Powder, smokeless, for cannon, as described in Item 16410 of Western Classification.
*241 A commodity rate is generally lower than a class rate and takes preference over class rates. See Chicago, Burlington and Quincy Railroad Co. v. United States, supra. It has been repeatedly held that the Government is at all times entitled to the lowest published tariff rates. See Great Northern Railway Co. v. United States, 170 Ct. Cl. 188 (1965).
The question of defendant’s action in combining the class rates with the commodity rates is not in issue, since the plaintiff does not dispute the applicability of the combination, but contests only the classification of the commodity shipped.
Plaintiff contends that since ammunition is classified according to type as “fixed”, “semi-fixed”, “separated”, and “separate-loading”, the classification depends entirely upon the relationship between the “propelling charge explosive train” and the “bursting charge explosive train”, or, more simply stated, whether the projectile is permanently attached to the cartridge case. This position is supported by testimony presented by plaintiff’s expert witness, Dr. Lewis. Defendant, on the other hand, contends that the classification is dependent upon whether the propelling charge contained in the cartridge case is “adjustable”. Thus, defendant concludes all that ammunition in which the propelling charge may not be adjusted is “fixed”. The testimony of defendant’s expert witness, Mr. Herczogh, supports this position. In view of the conflicting nature of the expert testimony relied upon by the parties in support of their respective positions outlined above, we must look to the whole record in order to find the answer to our problem.
War Department Technical Manual, TM 9-1904, Ammunition Inspection Guide, dated 2 March 1944, states that, “According to the method of assembly for transportation and for loading into the piece, [weapon] ammunition is classified as ‘fixed’, ‘semi-fixed’, or ‘separate-loading’ (unfixed),” which classifications are defined as follows:
Fixed Ammunition. This type com/prises a cartridge case (which contains the propellant) whose dase contains the primer, and whose forward opening is crimped to the projectile so that the entire rownd is integral and all components are loaded into the weapon in one operation. [Emphasis supplied]
*242 Semifixed Ammvunition. This type (differs from fixed ammunition in that, while the projectile and cartridge case are issued assembled and are loaded into the gun as a unit, the cartridge case is not permanently, attached to the projectile, but may be removed at the firing point for the purpose of varying the amount of propelling charge as desired. [Emphasis supplied]
Separate-loading Ammunition. The distinguishing characteristic of separate-loading ammunition is that it requires two or more operations to be loaded into the breech of the gun. The propellant and primer are loaded separate from the projectile. The propellant is contained in either cartridge bags in definite quantities, or loosely in an uncrimped cartridge case. In the former instance, the amount of propelling charge may be varied as desired. * * *
Department of the Army Technical Manual, TM 9-1901, Artillery Ammunition, dated September 1950, states that, “Dependent on the manner in which these components [components of a complete round of ammunition] are assembled for firing, complete rounds of artillery ammunition are known as fixed, semifixed, separated and separate-loading,” which classifications are defined as follows:
In fixed amrmmition, the propelling charge is fixed that is, not adjustable, and the complete round is loaded into the weapon as a unit. As usually designed, the propelling charge is assembled loosely in the cartridge case which is crimped rigidly to the projectile. * * * [Emphasis supplied]
Semifixed a/mmimition is characterized by an accessible propelling charge which may be adjusted for zone firing. Like fixed ammunition, it is loaded into the weapon as a unit. * * * [Emphasis supplied]
Separated ammunition is characterized by the arrangement of the propelling charge and the projectile for loading into the gun — 'the propelling charge, contained in a primed cartridge case, sealed with a closing plug, and the projectile are loaded into the gun in one operation. * * *
In separate-loading ammunition, the separate components — projectile, propelling charge, and primer — are loaded into the weapon separately, because the ammunition is too heavy and bulky to be handled as a unit. * * *
Departments of the Army and Air Force Technical Manual, TM 9-1900, and Technical Order, TO 11A-1-20, (a joint *243 publication), Ammunition, General, dated 1 June 1956, provides in pertinent part:
* * * Bounds of artillery ammunition that are composed of a projectile and an integral propelling charge have one basic designation for the complete round, which is the term “cartridge” or the older terminology of “projectile,” “shell,” or ‘'shot” and the qualifying adjective of “fixed” or “semifixed”. Bounds of artillery ammunition that are composed of a projectile and a separate propelling charge have a basic designation for the projectile of “projectile,” “shell,” or “shot” and the basic designation for the propelling charge of “propelling charge.” Such rounds are classified as “separated” or “separate-loading” ammunition.* * *
As stated earlier, ammunition for 120-mm (4.7-inch) gun is a form of “separate-loading” ammunition, known as “separated” ammunition which differs from other separate-loading ammunition in that the projectile and cartridge case, containing the propelling charge, are loaded into the gun in one operation. It is similar to “fixed” ammunition in that its propelling charge is not adjustable. Within this similarity, the conflict lies.
A comparison of Technical Manual, TM 9-1904, dated March 2, 1944, with Technical Manual, TM 9-1901, dated September 1950, quoted in pertinent part, supra, discloses during the intervening period between the dates said TM’s were issued, the definition of “fixed” ammunition underwent a change. In the latter TM, the distinguishing characteristic is the non-adjustability of the propelling charge. Subsequently, as evidenced by the Army and Air Force Technical Manual, TM 9-1900, and Technical Order, TO 11A-1-20, dated June 1, 1956, partially quoted above, the distinguishing characteristic once again became the integration of the projectile and cartridge case.
Considering the foregoing, it is not difficult to understand why both ordnance experts, Dr. Lewis and Mr. Herczogh, differed as to the meaning of “fixed” ammunition. It would appear that both men are correct, depending, of course, upon the technical manual each relied. The shipments in question occurred during the years 1944 and 1945; therefore, the definition of “fixed” ammunition set forth in TM 9-1904, *244 dated March 2,1944, which was in force during those years, must prevail. This is not to say, however, that with respect to freight classification, the term “fixed” ammunition, as used in the CFC’s, conveys the meaning plaintiff proposes. A tariff must be given a fair reading, and any unreasonable ambiguities cannot be imparted. See Hughes Transportation., Inc., v. United States, 169 Ct. Cl. 63 (1965), citing Aero Mayflower Transit Co. v. United States, 162 Ct. Cl. 233 (1963).
An examination of CFC’s numbers 1, 3, 5, and Supplement No. 4 thereto, and 6 reveals that “Ammunition, Explosive * * * For Cannon: With empty, sand-loaded or solid Projectiles (Loaded Cartridges) or without Projectiles (Blank Cartridges, metal)” consistently has been rated differently than “Ammunition, Explosive * * * For Cannon: With explosive Projectiles,” the latter being “subject to tariffs (rates and regulations) of the individual carriers”. A projectile is a missile, either solid or with an explosive, chemical or inert filler, propelled from the weapon by the force of gases produced by the propelling charge, and the freight ratings obviously are dependent upon the nature of the filler and the hazard incident to each.
The distinction with respect to the nature of the filler of the projectile for purposes of rate classification was retained until July 6, 1931, when the entry “N.O.I.B.N.” (not otherwise indexed by name) first appeared in Supplement No. 24 to CFC 6, under the subheading “fixed ammunition for cannon: * * * With empty, sand-loaded or solid projectiles:”.[3] This new item (N.O.I.B.N.) cancelled what had, in previous CFC’s, been described as “Ammunition, Explosives * * * For Cannon: With explosive projectiles”; projectiles “containing poisonous chemicals”; and with projectiles “containing non-poisonous chemicals or smoke producing compounds.” CFC No. 14 and Supplement No. 5 thereto, as well as CFC No. 16, effective December 6, 1943, with *245 respect to ammunition for cannon continued the use of the adjective “fixed” in connection with ammunition with projectiles, and also continued to distinguish “Ammunition, Fixed, for cannon, with empty, sand-loaded or solid projectile * * *” from ammwnition for cannon with explosive or chemical proyectiles, (the latter being designated as “Ammunition, fixed, noibn, for cannon, * * *”), by applying a Carload rating of Class 4 to the former and a Class 1 rating to the latter.
As previously noted, the entry, “cartridges, blank,” for cannon, first appeared under the heading “Ammunition, Explosive * * *” in Supplement No. 24 to CFC No. 6, effective July 6, 1931, wherein a Carload rating of Class 4 was applied to the item described in said entry. CFC No. 14 and Supplement No. 5 thereto, contained the entry “Cartridges, cannon, blank * * *”, and also applied a Carload rating of Class 4 thereto, as did CFC No. 16, effective December 6, 1943.
The Commodity Tariffs, TCFB 4-U and 4-V, mentioned earlier, do not contain entries describing ammunition in terms identical with those used in describing any of the items of ammunition listed under the entries quoted from the various CFC’s, which have been discussed in detail here-inbefore. However, said commodity tariffs do contain the description “Ammunition, fixed, for cannon, with empty, sand-loaded or solid projectiles or without projectiles”, and the same rates apply to each. There is no distinction, for purposes of rate classification, at least on the basis of the above commodity tariffs, between ammunition for cannon with or without projectiles, except that ammunition with explosive projectiles, not being listed, are not subject to commodity rates. It is reasonably clear from the record that the term “fixed ammunition”, when applied to the transportation characteristics of the commodity involved, means that the propelling charge therein is non-adjustable, and that ammunition for cannon (wherein the propelling charge is non-adjustable) with or without projectile, historically has been described for transportation charges as “fixed ammunition.”
On the basis of the above considerations, the application of the rates provided in Items 1606 and 3200 of TCFB’s 4 — U and 4-V cannot be restricted to ammunition with projectile *246 only. Under such an interpretation, the addition of tbe phrase “or without projectiles” would be a nullity, an interpretation which is inconsistent with the natural and obvious import of the tariffs. Southern Pacific Co., supra, p. 487. The articles shipped in this case are embraced within the descriptive nomenclature “Ammunition, fixed, for cannon, with empty, sand-loaded or solid projectiles or without projectiles”, contained in both the above-mentioned commodity tariffs, TCFB 4-U and 4-V.
Even should there be an ambiguity occasioned by the terminology of the tariffs involved, this would be little help to the plaintiff, for such ambiguities are generally resolved against the carrier in favor of the shipper. See Hughes, supra, and authorities cited therein; also Union Pacific Railroad Co. v. United States, 152 Ct. Cl. 523, 287 F. 2d 593 (1961).
Consistent with the foregoing and the detailed findings of fact, infra, plaintiff is entitled to recover from defendant the sum of $1,314.44 on the shipment in Category 5. On the remaining shipments in all other categories, defendant is entitled to recover $4,857.02, leaving a net recovery to defendant under its counterclaim in the amount of $3,542.58.

 The opinion, findings of fact and recommended conclusion of law are submitted under the order of reference and Rule 57(a).

 See footnote 3 to finding 3(e), infrcij which clearly shows that plaintiff’s petition herein was timely filed.

 In that case, plaintiff sued to recover sums alleged to he due for transportation charges on shipments of “bombs or mines”, carried for the Government. upon audit, the General Accounting Office determined that the “bombs or mines” shipped ■were not complete in that they did not include bursters, fuses, and mechanical parts essential to their functioning as “incendiary bombs”, and ruled that the “bombs or mines” should have been billed as “combination articles”, and the alleged overpayments were deducted from other sums due plaintiff. This court held that such shipments were properly billed by the plaintiff as “bombs or mines”, stating that “While the absence of the burster and fuse admittedly renders the shipment of the article less hazardous from a transportation standpoint, the only logical description of the article is as an incendiary bomb.”

 Denotes change not involving reduction nor advance.

 The “not otherwise Indexed by name” classification is a broader category into which fall those items which the carrier considers either too insignificant to list separately under a general heading, or which are unknown or not recalled at the time the tariffs are established for the specific items. Union Paciflo Railroad. Co. v. United States, 117 Ct. Cl. 757, 704, 93 F. Supp. 617 (1950).