**BOLIN DRIVE-A-WAY CO., A**
Corporation

v.

**UNITED STATES.**

No. 498-57.

United States Court of Claims.
Nov. 2, 1960.

Louis I. Dailey, Memphis, Tenn., for plaintiff. Harold G. Hernly and Wrape & Hernly, Memphis, Tenn., were on the brief.

Pauline B. Heller, Washington, D. C., with whom was Asst. Atty. Gen., George Cochran Doub, for defendant. Curtis L. Wagner, Jr., Knoxville, Tenn., was on the brief.

JONES, Chief Judge.

The primary issue in this case is the amount of compensation which plaintiff, a motor carrier, is entitled to receive for its services in transporting freight cargo trucks in interstate commerce on Government bills of lading.

The shipments involved in the pending case were from the Studebaker plant in South Bend, Indiana, to destinations in six other states during the years 1951, 1952, and 1953. It was a "driveaway service," the vehicle being moved over the highway under its own motive power, with the carrier furnishing the operator, paying all expenses of the operation, and assuming full responsibility for the movement.

The tariff schedule which became effective May 19, 1951, and to which plaintiff was a party is as follows:

### Additional Charges for Vehicles Equipped With More Than One Driving Axle

Vehicles equipped with more than one driving axle will be subject to an additional charge of one (1) cent per mile for each driving axle in excess of one, which *charge shall not apply on front axle which can be disengaged.* [Emphasis supplied.]

We italicize the last clause because this case turns on the interpretation to be given that clause. If plaintiff's interpretation is correct it would be entitled to recover $21,674.34 for the additional charge. On the other hand, if the additional charge is not proper then the defendant is entitled to the sum of $459.32 representing overpayments for which it has filed a counterclaim.

The trucks involved in this suit were the first to be equipped with an automatic clutch for controlling the engagement of the front axle. Theretofore the engagement and disengagement of the front axle were by lever operated by the driver. In other than normal conditions, such as rain, mud, snow, flood, ice, or on slippery wet pavement, it was desirable that the front axle be engaged.

In these particular trucks the clutch automatically became engaged when there was any slippage of the four rear wheels. Thus, there was a flow of power to the front axle which then became engaged. As soon as the normal conditions of the road were restored the clutch automatically became disengaged. In other words, what had theretofore been done by lever operated by the driver was now done automatically.

■ Both parties are agreed that the substantial ambiguities or expressions of doubtful meaning in the tariff are to be resolved in favor of the shipper, but that the ambiguity or doubt must be a reasonable one and that the language should not be subjected to a strained construction. United States v. Interstate Commerce Commission, 1952, 91 U.S.App. D.C. 178, 198 F.2d 958, 966, certiorari denied, 1952, 344 U.S. 893, 73 S.Ct. 212,

97 L.Ed. 691; Union Wire Rope Corporation v. Atchison, T. & S. F. Ry. Co., 8 Cir., 1933, 66 F.2d 965, 966–967, certiorari denied 1933, 290 U.S. 686, 54 S.Ct. 122, 78 L.Ed. 591; Christensen v. Northern Pac. Ry. Co., 8 Cir., 1950, 184 F.2d 534; Union Transfer Co. v. Renstrom, 1949, 151 Neb. 326, 37 N.W.2d 383.

■ However, in applying the rule as announced in the decisions cited and as applied in numerous decisions by the Interstate Commerce Commission to the language in question, we are unable to find any reasonable doubt as to the meaning of the provision. We can see no substantial difference in the result of having automatic as contrasted with mechanical engagement of the front axle when road conditions become abnormal, and disengagement when they become normal again. The end results are practically the same. The plaintiff claims that there are additional drivers' wages and other costs connected with the automatically controlled front axles. As indicated in finding 11, these costs are not established. As a matter of fact, it is usually thought that labor-saving devices tend in the long run to reduce rather than increase ultimate costs. However this may be, we think the front axle could be and actually was engaged and disengaged at the beginning and end of abnormal road conditions, and therefore came within the express language of the rate schedule.

The writer recalls that on his father's farm there were a good many rocks in one field. In using the cultivator in that field wooden pegs were placed in the shank so that when the plowshare or sweep hit a rock the peg would break and the plowpoint would drag back. It was then necessary to lift that part from the ground, restore the point to position, and insert another wooden peg. A short time thereafter someone in a manufacturing establishment with a "flash of genius" attached a strong spring which would hold the point in place, but when a rock was struck the point would automatically be drawn back and when the rock was passed the spring would pull it back into place. The fact that it was auto-

matic did not change the end result. The same purpose was accomplished in a different fashion. The plowpoint could be engaged and disengaged automatically rather than mechanically.

 Likewise in the case at bar, we think the front axle not only could be but was engaged when abnormal road conditions developed, and was then disengaged when road conditions became normal again.

The plaintiff is not entitled to recover, and since the additional charge for the front axle is not proper, the defendant is entitled to recover on its counterclaim the sum of $459.32. Judgment will be entered for the defendant in that amount and plaintiff's petition will be dismissed.

It is so ordered.

DURFEE, LARAMORE and MADDEN, Judges, concur.

WHITAKER, Judge, took no part in the consideration and decision of this case.