**UNION PACIFIC RAILROAD COMPANY**

v.

**UNITED STATES.**

No. 278–54.

United States Court of Claims.
March 1, 1961.

Raymond A. Negus, Washington, D. C., for plaintiff. Lawrence Cake and John Guandolo, Washington, D. C., on the brief.

Pauline B. Heller, Washington, D. C., with whom was Acting Asst. Atty. Gen. Geo. S. Leonard, for defendant.

LARAMORE, Judge.

Plaintiff sues for amounts which the defendant recovered from the plaintiff on account of alleged overpayments of freight charges. Plaintiff's claim is that the original charges were correctly determined and the deductions made by the General Accounting Office were unjustified.

The issue to be decided is whether the applicable charges are to be determined by applying TCFB Section 22 Quotation 13–A, as plaintiff contends, or whether that quotation may be used in combination with NPCFB Section 22 Quotation 47, as the defendant contends.

The facts are these: During the years 1947, 1949, and 1950, plaintiff, as the destination carrier, in conjunction with the Northern Pacific Railway Company, performed transportation services for the defendant by transporting shipments of smoke pots, bombs, ammunition, detonating fuses, explosive projectiles and smokeless powder. The carrier's bills were paid by the United States, prior to audit, in accordance with the provisions of Section 322 of the Transportation Act of 1940, 49 U.S.C.A. § 66. Section 322 provided that payment for transportation of property for or on behalf of the United States by any common carrier subject to the Interstate Commerce Act as amended, 49 U.S.C.A. § 1 et seq., or the Civil Aeronautics Act of 1938, 49 U.S.C.A. § 401 et seq., will be made upon presentation of bills therefor, prior to audit or settlement by the General Accounting Office, but that the right is reserved to the United States Government to deduct the amount of any overpayment to any such carrier from any amount subsequently found to be due such carrier.

Subsequently the General Accounting Office audited the bills, as provided for in Section 322, supra, and determined that a lower rate was applicable to said shipments. Using Northern Pacific Coast Freight Bureau Section 22 Quotation 47 (hereinafter referred to as Quotation 47), the General Accounting Office

applied the rate prescribed thereunder in Item 3. This rate consists of 5 cents [1] per 100 pounds between Bangor and Tacoma, plus the rate between Tacoma, Washington and destination as computed under Quotation 13–A.

Plaintiff was notified by the General Accounting Office of the overpayments so determined and directed that deduction might be made from other bills of plaintiff unless prompt refund was made. In some instances plaintiff made refunds and in other instances the General Accounting Office made deductions from other bills of plaintiff. The total amount recovered by the General Accounting Office by way of refund and deduction is $30,645.38.[2]

It is agreed between the parties that a Section 22 Quotation is a rate, charge or privilege tendered under Section 22 of the Interstate Commerce Act which offers to perform transportation services at rates intended to be lower than those provided in the published tariffs of a transportation company. There is no claim by either side that any published tariff applies.

During World War II, the Government constructed on Government land a rail line which connected the Navy facilities at Bremerton-Bangor with the Northern Pacific Railway terminus at Shelton. This provided an all-rail route for the transportation of Government property, particularly explosives, to or from the Bangor naval magazine, the Bremerton Navy Yard, and other facilities. Prior to this construction, the Navy facilities at Bangor, Ostrich Bay and Bremerton were served by car barge. Due to objections raised against the concentration of explosives in the Seattle area and their transportation by car barge, the con-struction of the Government railway was undertaken.

In order to meet the Navy's request for a rate that would be lower than the rail-barge rate for services to the facilities in the Bangor-Bremerton area, the Northern Pacific issued a Section 22 Quotation (Quotation 36) providing for a nominal arbitrary [3] of 5 cents per 100 pounds over the rates to and from Tacoma. Section 22 Quotation 36, issued to be effective from April 10, 1945, reads in pertinent part as follows:

*"Item No. 1   Traffic Covered*

"The traffic covered by and subject to this quotation is the property of the Government, originating at or destined to Portland, Oregon, or points south, east or west thereof, also points east of Easton, Washington, and west of transcontinental territory. The traffic must move via the Northern Pacific Railway between Shelton, Washington and Portland, Oregon or between Shelton, Washington and Easton, Washington to obtain the benefit of the rate quoted in Item No. 3.

\*    \*    \*    \*    \*    \*

*"Item No. 3   Rates to be Applied.*

"On explosives described in Item No. 2 a rate of 5¢ per one hundred pounds, minimum 50,000 pounds, will be applied between Tacoma, Washington and Shelton, Washington. It is understood that shipments will not necessarily move via Tacoma, Washington, but the rate authorized by this quotation will apply only on shipments moving via authorized tariff routes of the Northern Pacific Railway applicable to and from Tacoma, Washington.

---

1. At certain dates the rate increased to 7½ cents.

2. The parties have stipulated that if the plaintiff should prevail, it is entitled to $30,627.48, and if the defendant should prevail, plaintiff would be considered to have paid in full and defendant would be entitled to recover $6,277.91 on its counterclaim filed herein.

3. The parties have stipulated that an arbitrary is (a) a fixed amount which a transportation line agrees to accept in dividing joint rates; (b) a fixed amount added to a rate from or to one station to make a rate to or from another station.

*"Item No. 4 Land Grant Deductions*

"The rate prvoided under this quotation is a special rate not available to commercial shippers and is, therefore, not subject to deduction account of land grant, but nothing in this quotation shall deprive the Government of the rights to avail itself of any published tariff rate to which it is lawfully entitled less any lawfully applicable land grant deduction."

After denying appeals by the Union Pacific Railroad Company and the Chicago, Milwaukee, St. Paul and Pacific in Docket 14797, the Interstate Commerce Commission ordered common carrier rates to be effective 30 days from July 18, 1946, for points on the Government railroad. Special Supplement No. 85 to Tariff 65–F vacated, as of August 17, 1946, the postponement in Supplement No. 80. The tariff rates authorized under Supplements 79 and 85 became effective August 17, 1946. This made available a combination through rate between points on the Government railroad and points in the territory west of transcontinental. A through rate is a rate applicable through from point of origin to destination. A through rate may be either a local rate, a joint rate, or a combination of two or more rates.

On September 18, 1946, a conference was held between representatives of the United States Navy and the Northern Pacific Railway with respect to North Pacific Coast Freight Bureau Section 22 Quotation 36. Since Quotation 36 had expired with the issuance of the Certificate of Public Convenience and Necessity, the Navy requested the Northern Pacific to reissue Quotation 36 in order to provide a 5 cent arbitrary over Tacoma rates on explosives to and from points on the Government-owned railroad beyond Shelton. The Northern Pacific acknowledged the Navy's need for the reissue of Quotation 36 and agreed to the Navy's request for a change in Item 3 of Quotation 36.

On October 25, 1946, the North Pacific Coast Freight Bureau on behalf of the Northern Pacific Railway offered to the United States Navy NPCFB Section 22 Quotation No. 47, effective for all shipments moving on and after August 17, 1946. This quotation applied to the commodities involved herein and was in effect during the time the shipments were made and contained the following items:

*"Item No. 1 Traffic Covered*

"The traffic covered by and subject to this quotation is the property of the Government, originating at or destined to Portland, Oregon or points south, east or west thereof, also points east of Easton, Washington, and west of transcontinental territory on the one hand, and destined to, or originating at, points north of Shelton, Wash., to and including Bremerton-Bangor, Wash., on the other hand. The traffic must move via the Northern Pacific Railway *between* Portland, Oregon or *between* Easton, Washington, *and* points north of Shelton, Washington, to and including Bremerton-Bangor, Washington, to obtain the benefit of the rate quoted in Item No. 3.

\*    \*    \*    \*    \*    \*

*"Item No. 3 Rates to be Applied*

"(a) On explosives described in Item No. 2, moving as provided in Item No. 1, the rate shall be 5¢ per 100 lbs., minimum 50,000 lbs., higher than the rate applicable to or from Tacoma, Washington on the one hand, and points in the origin-destination territory described in Item No. 1, on the other hand, on the same commodity.

*"Item No. 4 Land Grant Deductions*

"The rate provided under this quotation is a special rate not available to commercial shippers and is, therefore, not subject to deduction account of land grant, but nothing in this quotation shall deprive the Government of the rights to avail itself

of any published tariff rate to which it is lawfully entitled less any lawfully applicable land grant deduction during the period the land grant deduction is in force.

\*    \*    \*    \*    \*    \*

"*Item No. 8    Termination of Quotation*

"This quotation is intended for application pending the establishment of through tariff rates *between* points north of Shelton, Washington, to and including Bremerton-Bangor, Washington and territory west of transcontinental. It is not operative where through rates are in force. It may be canceled by written notice of not less than sixty (60) days mailed by either party to the other except as to shipments made from point of origin before the effective date of such notice and except as to any accrued rights and liabilities of either party."

Quotation 47 was amended three times between 1947 and 1951 to provide increased raes; and was canceled, effective April 20, 1951.

On July 8, 1943, the Transcontinental Freight Bureau had promulgated TCFB Section 22 Quotation No. 13–A offering to the Government on behalf of all carriers specific rates predicated on mileage basis for shipments of ammunition and explosives originating at and consigned to points within Mountain Pacific and Pacific Coast territory. It provided through rates but not through tariff rates. This quotation and amendments thereto applied to the commodities involved herein and was in effect during the time the shipments herein were made and contained the following items and Exhibit A:

*Item No. 3.    Rates To Be Applied*

"Subject to compliance with all the terms and conditions of this quotation on each carload shipment of the kind referred to in Item No. 2, the railroads will apply rates as shown in Exhibit 'A' attached hereto, subject to minimum weight of 50,000 pounds.

"*Item No. 4.    Routing and Circuity Limitations*

"The rates as provided herein apply to short-line mileage via routes authorized in current class rate tariffs and subject to all circuity and other restrictions applicable to such class rate tariffs.

"*Item No. 5.    Land-Grant Deductions*

"No rate or charge applicable on any shipment moving under this quotation shall be subject to any land-grant deduction.

"*Item No. 6.    Charges and Allowances*

"Shipments made under this quotation are subject to all charges and all allowances for or in respect of diversion, reconsignment, arbitraries, demurrage, inspection, switching, and to all other privileges, charges and rules which in any way increase or decrease the amount to be paid on any shipment or which increase or decrease the value of the service, without, in any case, any land-grant deduction.

\*    \*    \*    \*    \*    \*

"*Item No. 8.    Termination of Quotation*

"This quotation may be cancelled by written notice of not less than sixty (60) days mailed by either party to the other except as to shipments made from original point of shipment before the effective date of such notice and except as to any accrued rights and liabilities of either party hereunder."

The parties have agreed that Quotation 47 was available at the time the shipments moved, covered the commodities shipped, and the territory in which the shipments moved. The plaintiff claims, however, that Quotation 47 is inapplicable because of certain language in Item 8 thereof entitled "Termination of Quo-

tation" which reads: "It is not operative where through rates are in force." Plaintiff further claims that both Quotation 13–A and Quotation 47 prohibit their use in combination, and that the lowest applicable rate for the shipments herein are those rates offered by the railroads in Quotation 13–A for shipments involving hauls by two or more rail carriers.

No through tariff rates were in effect on the date of issuance of Quotation 47 or at the time of the shipments in suit between points of origin and destination of such shipments.

In our opinion, the resolution of this case necessarily must depend upon what we believe to be the intent of the parties. The following reasoning, we believe, will demonstrate the intent of the parties.

Because of the objections raised against the concentration of explosives in the Seattle area and objections to transportation by car barge, the Government went to great expense in the construction of a railway which connected the naval facilities with the Northern Pacific Railway terminus. As a result thereof, the Northern Pacific was installed as the operator of the Government-owned railroad. In order to meet the Navy's request for a lower rate than the rail-barge rate, and in return for the long haul benefit to the railroad, and for the additional reason that the Northern Pacific would acquire all the business in spite of a competing railroad, the Northern Pacific issued a Section 22 Quotation (Quotation 36).

After Quotation 36 had expired, negotiations were begun to reissue the quotation or to issue another quotation so as to give the Government the benefit of at least a rate as low as that contained in Quotation 36. It mattered not whether that rate be more or less than the combination barge-railway rate, but whether a negotiated rate could be effected which was lower than Section 22 Quotation No. 13–A. This is so because Quotation No. 13–A was already in effect, and any advantage thereunder was always available to the Government. Therefore, negotia-

tions were entered into between the Navy and the Northern Pacific and Quotation 47 resulted.

To say, as the plaintiff contends, that the second sentence of Item 8 of Quotation 47 makes the Quotation inoperative would be to say that Quotation 47 was stripped of any meaning or application even at its inception as there was a through rate in force for all the territory covered thereby before not only Quotation 47 but before its predecessor, Quotation 36. The parties agree that Quotation 13–A was in effect prior to the issuance of Quotation 47 and provided a through rate for the entire territory covered by Quotation 47.

Therefore, since Quotation 47 was a negotiated quotation, in order to give any meaning thereto, the second sentence of Item 8 thereof must necessarily be read in context with the entire Item. In other words, the Quotation was obviously intended for application pending the establishment of through tariff rates, and when the through tariff rates were established the quotation would no longer be applicable and would be terminated. As a matter of fact, plaintiff's witness H. Ray Henderson, assistant general freight agent in charge of freight tariffs, testified on direct examination to the same effect.

If, on the other hand, Quotation 13–A defeats the operation of Quotation 47, then we must again say that Quotation 47 was void at its inception since Quotation 13–A was effective long before Quotation 47. Then, too, the parties did amend Quotation 47 three times to increase its rates, which under plaintiff's theory were never available anywhere. In this respect, the plaintiff's expert rate witnesses testified that under plaintiff's construction of Item 8 of Quotation 47, the Quotation would not provide the Government with any rates. In fact, some of plaintiff's witnesses testified that this was the intention of plaintiff. If so, it was certainly a unilateral intention, and not binding upon the defendant, inasmuch as it is quite apparent that the

Navy had an entirely different thought in the matter, and common sense teaches us that it was intended that Quotation 47 have some meaning. It could have no meaning other than to afford the Government a lesser rate than that which was effective at and prior thereto. As we stated previously, Quotation 13–A was already available, so something less than the rates therein must have been intended.

Therefore, we believe under the facts and circumstances of this case, that the only way to give meaning to Quotation 47 is to say that the Quotation was meant to and does give to the Government the lowest applicable rate, which can only be a combination of Quotation 47 and Quotation 13–A. Consequently, the General Accounting Office was correct in its determination that Quotation 13–A could be used in conjunction with Quotation 47.

The above reasoning is compatible with the decision of the U.S. Court of Appeals, 8th Circuit, in the case of A. E. West Petroleum Co. v. Atchison, T. & S. F. Ry. Co., 212 F.2d 812, 816, wherein that court used the following language with reference to rules of construction:

"A published carrier rate is in the nature of an offer by the carrier to shippers of a contract for carriage under the terms and conditions contained in the tariff. Therefore, a tariff is to be construed as having the meaning which it would reasonably have to such shippers. Where words in a contract, if construed literally, would produce an unfair, unusual or improbable result, such construction is to be avoided if possible. All pertinent parts of a contract are to be construed together so as to give effect to them."

The above case also holds that in interpreting tariff schedules made under the Interstate Commerce Commission tariff rules, rules would be construed as to carry out the intention of the parties, resolving any doubts, as to meaning, in favor of the shipper, and construction would be fitted to and controlled by the fact situation presented. See also Alcoa S. S. Co., Inc. v. United States, 338 U.S. 421, 424–425, 70 S.Ct. 190, 94 L.Ed. 225.

This is quite apparently the manner in which the Northern Pacific, at least once treated the matter as is disclosed by defendant's exhibits 22a and 22b introduced in evidence in the trial of this case. Exhibit 22a is a telegram sent to one F. A. Cleveland, asking for advice on the question of whether Quotations 13 and 47 on a carload of bombs could be used. Exhibit 22b is the reply from Cleveland advising that the Quotations could be used. Plaintiff attempts to explain away the force of these exhibits by testimony that a Mr. Myers and not F. A. Cleveland actually formulated the reply (exhibit 22b). However, Mr. Myers was also a qualified rate man as far as Section 22 Quotations were concerned.

For the foregoing reasons, plaintiff is not entitled to recover, and its petition will be dismissed. Defendant is entitled to recover $6,277.91 on its counterclaim.

It is so ordered.

REED, Justice (Retired), sitting by designation, JONES, Chief Judge, and DURFEE and MADDEN, Judges, concur.