Durfee, Judge,
delivered the opinion of the court:
This claim for refund by plaintiff concerns the applicable charges for shipments of ammunition by plaintiff for defendant. During the month of June 1951, plaintiff motor carrier transported 15 shipments of ammunition on 15 Government bills of lading from Fort Estill, Kentucky to Milan, Tennessee. The initial billing by plaintiff and payment by defendant for these shipments was pursuant to a special rate specified for the Government by plaintiff under a Section 22 Quotation No. 34, effective June 22, 1951, the day before the first transportation of these 15 shipments. A Section 22 Quotation is a contract and special tariff under 49 TJ.S.C. § 22, giving the United States a different, preferential rate from that available to the public. Quotation No. 34 was applicable on “Ammunition and Explosives.” As to the rate and minimum weight per shipment, Quotation No. 34 required:
INTERSTATE RATES
Kates to apply will be 65% of the current first (1st) class motor carrier rates published in tariffs to which Hughes Transportation, Inc. is a party subject to 65% of the current rail first (1st) class rates as maximum.
* ❖ * * ❖
MINIMUM WEIGHT
Volume minimum weight of 50,000 pounds subject to truckload minimum of 20,000 pounds when quantity tendered for shipment at any one time is less than 50,000 pounds in weight.
The resulting rate under Quotation No. 34 was $1.54 per hundred pounds, subject to the minimum weight provisions. Previously plaintiff’s applicable tariff rate was $1.93 per *65 hundred pounds subject to a minimum weight of 20,000 pounds. Plaintiff’s purpose in tendering Quotation No. 34 to the Government was to meet railroad competition; the quotation specified that its specified rate of 65 percent of the first class motor carrier rate was “subject to 65% of the current rail -first class rates as maximum.” [Emphasis supplied.] This 65 percent of the first class rail rate was provided in a previous special Section 22 Quotation No. 14 issued by the Association of American Railroads. It was made subject to a minimum weight of 50,000 pounds, and plaintiff motor carrier adopted this same 50,000 pound minimum volume weight in its Quotation No. 34, “subject to truckload minimum weight of 20,000 pounds when quantity tendered for shipment at any one time is less than 50,000 pounds in weight.'' [Emphasis supplied.] The controversy in this case arose later between plaintiff and defendant as to the correct interpretation of these two minimum weight provisions.
One of these 15 shipments of ammunition — the one transported on June 23rd — weighed 10,689 pounds. Five of the other 14 shipments were transported on June 25th, four shipments on June 26th, two on J une 27 th, and three on June 28th. Each of these 14 shipments weighed 23,100 pounds. Each shipment was made under a separate Government bill of lading. Upon completion of the services, plaintiff billed the transportation charges therefor on the basis of the Quotation No. 34 rate at $1.54 per hundred weight on actual weight of 23,100 pounds each on 14 shipments, and on a minimum weight of 20,000 pounds as to the one shipment of 10,689 pounds actual weight. This bill was paid in full in the sum of $7,913.10 by defendant on August 8, 1951. About nine years later, on July 12, 1960, plaintiff claimed additional transportation charges in the amount of $6,261.64. This claim was computed by applying the Quotation No. 34 rate of $1.54 per one hundred pounds to a minimum weight of 50,000 pounds for each of the 15 truckload shipments. The General Accounting Office disallowed this claim on January 23, 1961.
Thereafter, on April 19, 1961 plaintiff filed another amended claim for $5,376.64 for undercharges on these 15 *66 shipments, based upon a class 100 rate of $2.37 per one hundred pounds and a volume minimum weight of 30,000 pounds per SMCEC Tariff 1-B. This claim was paid in part, in the sum of $1,339.26 by the General Accounting Office on October 5,1961, on the basis of a class 75 rate of $1.93 per hundred pounds and a minimum weight of 20,000 pounds per truckload under authority of SMCEC 1-B, Sup. #119, Sup. 162 and 156, MFICC 370, (EB400) and SMCEC 3-E, Item 3940, Class 75. However, the General Accounting Office later reversed this allowance, and asserted that the proper rate was the original billing rate previously claimed by plaintiff under Quotation No. 34 in 1951. By notice of overcharge, dated November 6, 1961, the Government requested plaintiff to refund its last payment of $1,339.26, and upon plaintiff’s refusal to refund, this amount was deducted from other sums due plaintiff. This $1,339.26 is the amount which plaintiff now seeks to recover.
It is conceded by the parties that if Quotation No. 34 does not apply, the $1.93 per hundred pounds and a minimum truckload weight of 20,000 pounds provided under the class 75 tariff rate, supra, does control.
Plaintiff now asserts that its original billing in 1951 was in error, and that Quotation No. 34 applies only on minimum volume shipments of 50,000 pounds or more, and not to the shipments in question because, (1) said shipments weighed only 23,100 pounds each, except one of 10,689 pounds; (2) the shipments were tendered to plaintiff at different times; (3) the shipments were tendered wader separate bills of lading. Plaintiff contends that the 20,000 pound minimum weight provided in Quotation No. 34 is not a further or alternative limitation upon the application of the 50,000 pound volume minimum limitation of the rate, but is merely a truckload minimum limitation, so that if a volume minimum of 50,000 pounds or more tendered on one day and on one bill of lading was actually shipped in part lots on more than one truck, said part lot shipments would be subject to a truckload minimum weight of 20,000 pounds per vehicle in order that each vehicle would earn revenue on at least 20,000 pounds. Since none of the freight transported in each of the 14 ship- *67 taents of 23,100 pounds or the one of 10,689 pounds was equal to the volume minimum of 50,000 pounds, plaintiff asserts that the volume minimum rate of $1.54 under Quotation No. 34 does not apply to these 15 shipments. Accordingly, plaintiff contends that the lowest applicable rate to which the Government is entitled is the tariff rate of $1.93 per hundred pounds on a minimum weight of 20,000 pounds for which it was finally paid $1,339.26, and which was later deducted by defendant from other amounts due.
Defendant interprets a Quotation No. 34 as follows:
1. If 55,000 pounds is tendered at one time and three trucks were required to transport this volume shipment, the minimum weight of 50,000 pounds must be protected, without regard to the truckload minimum of 20,000 pounds.
2. However, if 45,000 pounds were tendered for shipment, and three vehicles were required to transport the total shipment, a minimum weight of 20,000 pounds per truck, of 60,000 pounds total minimum weight at $1.54 per hundred pounds must be protected.
3. If 20,000 pounds or less is tendered for shipment (for example, defendant’s one truckload shipment of 10,689 pounds), then the minimum truckload weight of 20,000 pounds must be protected.
Since each of the 14 shipments of 23,100 pounds was loaded and transported in one vehicle at less than 50,000 pounds volume weight, the minimum truckload weight of 20,000 pounds was protected under the original billing by plaintiff and payment by defendant at the quotation rate of $1.54 for 23,100 pounds.
We accept the interpretation of Quotation No. 34 urged by defendant as to-these shipments. This was the interpretation originally adopted by plaintiff in its own 1951 billing to defendant on these shipments. We note that plaintiff thereafter claimed three different rates and minimum weights as a basis for additional freight charges on these same shipments:

Rate per Minimum Bate 100 lbs. Weight

July 20, 1951-$1. 54 20,000 pounds
July 20, 1960- 1.54 50,000 pounds
April 19, 1961- 2.37 30,000 pounds
March. 8, 1961- 1. 93 20,000 pounds
*68 A definition and discussion of the application of the terms “volume minimum weight” and “truckload minimum weight” may be found in our Finding of Fact No. 2 in Baggett Transportation Company v. United States, 162 Ct. Cl. 570, 584-86 (1963) ,[1] and are herein incorporated by reference. As generally defined in Stoves from Alabama and Tennessee to Interstate Points, 4 M.C.C. 641:
A volume minimum is distinguished from a truckload minimum in that the volume rate applies when a shipper tenders the volume minimum weight of a commodity for transportation at one time, even though it may exceed the carrying capacity of the largest vehicle available and must be transported in two or more vehicles, whereas a truckload minimum is generally understood to be the quantity which a carrier can transport in a single vehicle.
Section 22 quotations are subject to interpretation under the normal rules of contract interpretations. Baggett Transportation Co., supra, and under the rules for the interpretations of tariffs, Union Pacific Rr. Co. v. United States, 152 Ct. Cl. 523, 287 F. 2d 593 (1961).
Quotation No. 34 starts out with a clause referring to a volume minimum weight of 50,000 pounds," however, it goes on to include another clause, “when quantity tendered for shipment at one time is less than 50,000 pounds in weight.” Nowhere is there any indication in these two weight clauses that the provision for 50,000 pound minimum volume excluded the acceptance of any shipment under 50,000 pounds at the Quotation rate; rather, it appears that for any shipment under 50,000 pounds, the Quotation rate applies, subject only to the truckload minimum of 20,000 pounds.
We must give the tariff a fair reading, and cannot impart any unreasonable ambiguities. Aero Mayflower Transit Co., Inc. v. United States, 162 Ct. Cl. 233 (1963). However, even if the tariff were ambiguous, this would not help plaintiff, for such ambiguities are generally resolved against the carrier and in favor of the shipper. Hayes Freight Lines, Inc. v. United States, 163 Ct. Cl. 265 (1963), Union Pacific Rr. Co., supra.
*69 We conclude that defendant was entitled to the lowest applicable tariff rate which, in this case, was the alternative rate of $1.54 per hundred pounds under Quotation No. 34, for shipments of less than 50,000 pounds, subject to a truckload minimum weight of 20,000 pounds. Plaintiff has been correctly paid under the applicable rate. Plaintiff’s motion is denied; defendant’s cross-motion is granted, and the petition is dismissed.

Tlie court’s opinion is also reported in 319 F. 2d, 864, but "without Findings of Fact.