## UNION PACIFIC RAILROAD COMPANY

v.

### The UNITED STATES.

### No. 204–65.

United States Court of Claims.

Dec. 11, 1970.

Martin Sterenbuch, Washington, D. C., attorney of record, for plaintiff.

John Charles Ranney, Washington, D. C., with whom was Asst. Atty. Gen. William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## OPINION

PER CURIAM:

This case was referred to Trial Commissioner Saul Richard Gamer with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 134(h). The commissioner has done so in an opinion and report filed on March 23, 1970, wherein he recommended that plaintiff recover and that judgment be entered for plaintiff in the sum of $11,-983.65. On April 21, 1970, plaintiff filed a notice of intention to except to the commissioner's opinion, findings and recommended conclusion of law. However, al-

though two extensions of time were granted therefor, no exceptions were filed and on June 12, 1970, the parties filed a stipulation of settlement wherein, among other things, plaintiff agreed to accept $11,983.65 (the same amount as the judgment for plaintiff recommended by the commissioner) in full settlement of all its claims arising out of the transactions involved and defendant agreed to entry of judgment in favor of plaintiff in such amount, with no costs to be assessed either party.

On July 6, 1970, plaintiff filed a third and further motion for extension of time to August 7, 1970, to file its exceptions to the trial commissioner's report of March 23, 1970, asserting that the purpose of the stipulation of settlement was to have judgment entered without the adoption by the court of the commissioner's opinion. On October 2, 1970, the court entered an order that the stipulation of the parties (filed June 12, 1970) was not adopted by the court, because of the condition that the commissioner's opinion not be adopted, and granting plaintiff an extension of time to November 2, 1970, to file its exceptions to the commissioner's report and its brief.

On October 26, 1970, the parties filed another "stipulation of settlement" stating, among other things, that it "is made for the purpose of enabling the Court to enter judgment in this case in favor of the plaintiff and against the defendant in the sum of $11,973.65 in the event the Court shall accept this stipulation in its entirety. However, if this stipulation is rejected in whole or in part by the Court, it is agreed that the entire stipulation shall be void and of no force and effect whatsoever." The court assumes that the purpose of this stipulation was the same as the earlier stipulation.

On November 2, 1970, plaintiff filed a motion for an enlargement of time of 30 days, to and including December 2, 1970, to file its exceptions (to the commissioner's report of March 23, 1970) stating that defendant has no objection.

The court rejects and does not accept the stipulation of the parties, filed October 26, 1970, and denies plaintiff's motion, filed November 2, 1970, for extension of time to file exceptions to the commissioner's report of March 23, 1970.

Since the court agrees with the commissioner's opinion, findings and recommended conclusion of law, it hereby adopts the same, as hereinafter set forth, as the basis for its judgment in this case. Therefore, plaintiff is entitled to recover and judgment is entered for plaintiff in the sum of $11,983.65.

## OPINION OF COMMISSIONER

GAMER, Commissioner:

The plaintiff carrier and the defendant shipper are here in dispute concerning the amount to which plaintiff is entitled for transporting certain freight automobiles by rail from Virginia Beach, Virginia, to Fort Riley, Kansas.

Prior to the shipments, plaintiff had become a party to a Section 22 Quotation on freight automobiles transported over such route.[1] The dispute involves the applicability of the rates quoted therein to the shipments here involved, defendant relying on such rates and plaintiff urging their inapplicability.

The controversy centers upon the fact that the Section 22 Quotation offered "carload" rates on freight vehicles, while defendant, by its bills of lading covering the shipment of the vehicles here involved, required that they be transported in mixed carloads. All of the disputed charges are with respect to cars which contained both freight vehicles and other vehicles (freight trailers), *i. e.*, the freight vehicles did not by themselves in any of these instances make up the full carload. Nevertheless, in calculating the

1. Under 49 U.S.C. § 22 (1964), carriers may agree with the United States to transport property "at reduced rates." "Since such deviations are authorized by § 22 of the Interstate Commerce Act, such a rate is said to be the product of a 'section 22 agreement' or to be a 'quotation rate.'" Great Northern Ry. Co. v. United States, 312 F.2d 901, 903, 156 Ct.Cl. 332, 335, (1962).

total charges applicable to these cars, defendant seeks to apply the "carload" rates offered in the Quotation to the freight vehicles portion of the carload. Thus, on each such car, defendant claims that the total car charge should be computed on the basis of the Quotation rate for that part of the carload represented by the freight automobiles, plus the regular tariff rate applicable to the other vehicles comprising the balance of the carload (in this instance, the less-than-carload tariff rate applicable to freight trailers).

In using this method of computing the aggregate per car charges, defendant relies on the provisions of Uniform Freight Classification 6 (UFC 6), a tariff filed with the Interstate Commerce Commission to which plaintiff is a party. Rule 10 of this tariff, entitled "Mixed Carloads," provides certain methods of calculating charges "when a number of articles" for each of which a "straight carload" rate is provided, "are shipped at one time by one consignor to one consignee and destination in a carload." One such method is set forth in Section 5 of this rule which provides that "[w]hen the aggregate charge upon the entire shipment is less on basis of carload rate * * * for one or more of the articles and * * * at less than carload rate or rates for the other article or articles, the shipment will be charged for accordingly." In the case of each mixed carload here involved, lower aggregate per car rates would, if the methods of computing aggregate car charges specified in Rule 10, including Section 5 thereof, are applied, result from the application of the Section 22 Quotation carload rate to the freight automobile part of the carload as against the regular tariff rates which would otherwise be applicable to such part, and which plaintiff seeks to apply. Rule 10 is, says defendant, made applicable to the mixed carload shipments here involved because its provisions are incorporated into the Section 22 Quotation. The Quotation provided that the "charges" set forth therein were "under and subject to the terms and conditions herein stated, and as shown in Appendix

'A.'" Appendix A was attached to the Quotation and contained seven items or paragraphs. One item, headed "Charges and Allowances," provided that "[e]xcept as otherwise provided herein, shipments made hereunder are subject to all * * * privileges, charges and rules which in any way decrease or increase the amount to be paid on any shipment or which increase or decrease the value of the service, as provided in tariffs on file with the Interstate Commerce Commission * * * or in any Section 22 Quotation." Since Rule 10 is a tariff rule which serves to decrease the amount to be paid on mixed carload shipments, it is, says defendant, one of the rules thus made a part of the Quotation by Appendix A.

Considering the provisions of the Quotation, the Appendix, and Rule 10 of UFC 6, it is plain that defendant's analysis is correct. Therefore, Rule 10 is applicable to the mixed carload shipments here involved and the Section 22 Quotation rates should be applied to the freight automobiles in computing the aggregate per car charges under Rule 10.

All of the conditions of the rule are here applicable. Carloads of mixed articles were shipped at one time by one consignor to one consignee and destination. Since the "aggregate charge on the entire" carload is "less on [the] basis of [the Section 22] carload rate * * * for one * * * of the articles [the freight automobiles] and * * * at less than [the] carload rate * * * for the other article * * *," the shipment must "be charged for accordingly." There is, furthermore, no question but that Rule 10 is incorporated into the provisions of the Quotation by Appendix A since, by the express provisions of the Charges and Allowances paragraph of such Appendix (referred to by defendant as the "omnibus clause"), the Quotation shipments "are subject to all * * * privileges, charges and rules" which are provided for "in tariffs on file with the Interstate Commerce Commission" (UFC 6, containing Rule 10, being so filed), and which "in any way decrease * *

the amount to be paid on any shipment or which \* \* \* decrease the value of the service \* \* \*." There is nothing in Rule 10 which precludes the use of a Section 22 carload rate for the less-than-carload portion of a mixed carload shipment. *Cf.* Pennsylvania R. R. Co. v. United States, 165 Ct.Cl. 1 (1964), in which the court held that the provisions of an explosives tariff which served to "increase the value of the service" were "expressly imported" into the Section 22 Quotation there involved by the provisions of a substantially identical "Charges and Allowances" item. Similarly, in Great Northern Ry. Co. v. United States, 160 Ct.Cl. 225, 312 F.2d 906 (1963), the court held that a rule contained in an Interstate Commerce Commission Tariff Circular concerning the construction of combination through rates "must," again on the basis of a substantially identical "Charges and Allowances" item contained in the quotation, "be considered as being incorporated within the Section 22 Quotation \* \* \*." 160 Ct.Cl. at 235, 312 F.2d at 911–912. And in Great Northern Ry. Co. v. United States, 312 F.2d 901, 156 Ct.Cl. 332 (1962), the court likewise held that certain rates should be computed by using a Section 22 Quotation, including as a part thereof a reconsignment tariff which, again by reason of a substantially identical "Charges and Allowances" item contained in the quotation, was treated as being "included within the quotation." 312 F.2d at 905, 156 Ct.Cl. at 339.

The only answer plaintiff has to this analysis is that the instant Section 22 Quotation "says nothing about mixed carloads and contains nothing to suggest that the lower rates offered are available on shipments in mixed carloads."[2] The contention is, in effect, that unless the Quotation expressly and specifically says it is applicable to mixed carloads, the lower rates set forth therein are not so applicable. However, since, as shown, the mixed carload Rule 10 was incorpo-

rated into the Quotation by the Charges and Allowances paragraph of Appendix A, a provision in the Quotation expressly making the lower rates offered therein available on mixed carload shipments was unnecessary. Indeed, it is plain that under the circumstances here involved, the rule is the exact opposite of that for which plaintiff contends. The Charges and Allowances paragraph of Appendix A expressly states that *"except as otherwise provided herein,"* shipments of the articles described in the Quotation are subject to the provisions of other tariffs "which in any way decrease \* \* \* the amount to be paid on any shipment \* \* \*." (Emphasis supplied.) Thus, with mixed carload tariff Rule 10 being thereby incorporated into the Quotation "except as otherwise provided herein," only a provision in the Quotation expressly making the rates therein inapplicable to mixed carloads could serve to nullify the applicability of Rule 10 to the Quotation rates. It is noted that this is exactly what was done in other connections, the Quotation in fact containing express provisions making the rates therein inapplicable to certain stated situations. For instance, the Quotation provided that the rates were "not subject to X–223–Series increase." And Appendix A specifically provided, under the paragraph headed "Combination Rates," that the "rate[s] named herein are not applicable in constructing combination rates in connection with rates named in other Section 22 Quotations nor in published tariffs."

It should be made clear that plaintiff is not contending that the Quotation rate is here inapplicable simply because it is a "carload rate" and therefore not properly applicable to an article which forms a less-than-carload portion of a mixed carload. The rate which plaintiff itself here seeks to apply to the freight automobiles is also, in accordance with the provisions of Rule 10, a carload rate, *i. e.*, the regular tariff carload rate.[3] Thus

---

2. Pltf. Requested Findings of Fact and Brief at 6.

3. The schedules attached to plaintiff's petition, which set forth the details of its

plaintiff concedes the propriety, on a mixed carload, of applying, in accordance with Rule 10 (when the conditions of the rule are otherwise satisfied), the carload rate to one of the articles therein when, as Section 5 of the rule states, "the aggregate charge upon the entire shipment is less on basis of carload rate * * * for one * * * of the articles and on basis of * * * less than carload * * rates for the other article or articles * * *." In thus seeking to apply the regular tariff carload rate to the freight automobile portion of the cars here involved instead of the lower Section 22 Quotation carload rate, plaintiff is, in effect, arguing that, insofar as the Government is concerned, it has two carload rates outstanding on freight automobiles, one (the regular tariff carload rate) to be used on mixed carload shipments where Rule 10 requires the application of a carload rate, and the other (the Section 22 Quotation rate) to be used only on straight carload shipments. Since normally a Section 22 Quotation is designed to substitute a lower preferential Government rate for the higher tariff rate applicable generally to all shippers, such an intent on plaintiff's part to have two different outstanding carload rates applicable to the Government would appear to be quite unusual and hardly, therefore, to be inferred. Although, as stated, it seems that such a result could have been accomplished by an express provision in the Quotation making the rates set forth therein inapplicable in constructing aggregate carload rates on mixed carload shipments, it must be concluded that the lack of such an express provision and, instead, the incorporation of Rule 10 into the Quotation by the terms of Appendix A, necessarily make the Quotation rate, under the appropriate conditions specified in Rule 10, applicable to mixed carloads.

 The broad principle plaintiff seeks to establish, *i. e.,* "that a section 22

rate cannot be used on part of a mixed carload," [4] certainly must be rejected. The ordinary rules of contract interpretation apply to a section 22 quotation as well as to a regular freight tariff. The intent of the parties is controlling. Pennsylvania R. R. Co. v. United States, *supra*; Union Pacific R. R. Co. v. United States, 287 F.2d 593, 598, 152 Ct.Cl. 523, 532 (1961). A section 22 quotation or agreement is not an inherently different type of tariff document to which rules of construction different from those generally applicable to the interpretation of tariff documents apply. Therefore, a "section 22 rate" may or may not be "used on part of a mixed carload," depending upon the intention of the parties. On this record, that intention is ascertainable only from the terms and provisions of the particular quotation here involved. Compare Union Pacific R. R. Co. v. United States, *supra*, holding that "under the facts and circumstances of this case" [287 F.2d at 598, 152 Ct.Cl. at 531] one section 22 quotation rate could be used in combination with another quotation rate to provide a through rate, with Great Northern R. R. Co. v. United States, *supra*, holding that under the circumstances there involved, a quotation rate to one destination could not be combined with a tariff rate from that point to the point of ultimate destination in order to provide a lower through rate from the point of origin to the point of ultimate destination. In the *Great Northern* case, the court did state, however, that:

> * * * On the other hand, if a § 22 quotation rate reveals an intention that it may be so used, it may be combined with another quotation rate to produce an aggregate rate lower than the through tariff rate. Cf. Union Pacific R. Co. v. United States, 287 F.2d 593, 152 Ct.Cl. 523. And perhaps, since the Government may receive preferences, a quotation rate may also be combined with a local tariff if the quotation is

claim, show, and the parties have stipulated, that plaintiff claims "on the basis of the *carload* tariff rates on freight automobiles and less-than-carload rates on

freight trailers * * *." (Emphasis supplied.) [Stipulation of Facts, ¶ 8.]

4. Stipulation of Facts, ¶ 6.

designed to be used in that manner. [312 F.2d at 903, 156 Ct.Cl. at 336.]

Thus, if a carrier-party to the instant Quotation intends that the rates therein "not be used on part of a mixed carload," as plaintiff here argues, it should make its intention clear in this respect. It can, however, hardly claim such an intention when, as part of the Quotation, it includes a broad provision which serves to make the shipments "subject to" a tariff rule expressly directed to the computation of rates on mixed carloads. Any ambiguity in this respect, should there be deemed to be one, must, in accordance with normal rules relating to the interpretation of documents, be construed against the carrier, since it is the author of the quotation. Great Northern Ry. Co. v. United States, 178 Ct.Cl. 226, 246 (1967); Union Pacific R. R. Co. v. United States, *supra*, 287 F.2d at 598, 152 Ct.Cl. at 532.

In view of this disposition of the disputed items, it is not necessary to consider defendant's alternative contention that it is also entitled, under the provisions of the "Acceptance of Quotation" paragraph of Appendix A, to have the charges for the freight automobiles part of the mixed carload shipments determined by the terms of the Quotation.[5]

When the petition herein was filed, the parties were also in dispute on certain shipments involving other issues. These issues have now been resolved on the basis of decisions in other cases subsequently handed down. The parties have stipulated that if defendant prevails on the one issue that remains in dispute, plaintiff's recovery on all items covered

by the petition should be limited to the sum of $11,983.65. Accordingly, judgment should be entered for plaintiff in such amount.

---

5. This provision states in part: "This quotation, when accepted by the Government by making any shipment or settlement under the terms hereof *or otherwise*, will constitute an agreement between the parties hereto as to the transportation services herein described." (Emphasis supplied.)

The contention is that the shipment of a commodity covered by the Quotation in a carload mixed with commodities not covered by the Quotation would, even if the Quotation is construed so as to limit its application to "straight" carload shipments, nevertheless be a shipment made "otherwise" than under the terms of the Quotation, and would, under such Acceptance of Quotation paragraph, make the part of the mixed carload shipment, for which services are described by the Quotation, subject to the terms thereof.