C & H TRANSPORTATION CO., Inc.

v.

The UNITED STATES.

Nos. 373–65 and 210–68.

United States Court of Claims.

Jan. 22, 1971.

Carl L. Phinney, Dallas, Tex., attorney of record for plaintiff in No. 373–65, Ralph W. Pulley, Jr., Dallas, Tex., attorney of record for plaintiff in No. 210–68. Phinney, Hallman, Pulley & Livingstone, Dallas, Tex., of counsel.

John C. Ranney, Washington, D. C., with whom was Asst. Atty. Gen., William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## OPINION

PER CURIAM:

This transportation suit was referred to Trial Commissioner Mastin G. White for preparation and filing of his opinion and recommended conclusion of law. The commissioner has done so in a report filed January 28, 1970. The plaintiff has requested review. The case has been submitted to the judges on oral argument and briefs. The Court agrees with the Trial Commissioner's conclusion and his recommended disposition but supplements his opinion as follows * :

■ Plaintiff challenges the Trial Commissioner's conclusion that Item 187 of Tariff No. 2–G was a rate provision. Although the item was not a rate provision in the strict sense that it listed specific rates for various commodities, it nevertheless provided for an increase in the basic commodity rates otherwise set forth in the tariff in proportion to the value of each shipment as declared by the shipper. Item 187 was expressly tied to the commodity rates contained in plaintiff's Tariffs 2–G and 2–H. The facts show that these commodity rates were generally higher than and were quite different from the scheme of rates contained in plaintiff's Section 22 Tenders No. 100–L and No. 100–M. Tender No. 100–L, a 69-page document, contained 35 items of general rules

and regulations, two items consisting of commodity descriptions, and two sections specifying rates, one covering commodity rates and another distance commodity rates. Therefore, we think that, although the case is not directly in point, Strickland Transp. Co. v. United States, 334 F.2d 172 (5th Cir. 1964), supports the Trial Commissioner's opinion.

■ However, we reach the same result on additional grounds. Item 187 of plaintiff's Tariff 2–G (the released value provision) did not become effective until September 25, 1961, after plaintiff had submitted Tender 100–L to the various agencies of the Government. That tender, its supplements, and Tender No. 100–M, which superseded Tender No. 100–L, constituted continuing offers by the plaintiff to ship goods for the Government in accordance with the provisions of the various tenders.

■ Between August 15, 1961 and May 1, 1962, eight supplements to Tender 100–L were issued but none contained a specific reference to Item 187 of plaintiff's Tariff 2–G or other provisions clearly showing that released value provisions of Item 187 applied to the shipments of the radar units involved here. However, in Tender No. 100–M, which became effective January 30, 1963, there was included Item 200, which provided that, upon request of the Government, "Special Easy Ride Equipment" would be furnished at the rates provided in Item 200. Note 3 of Item 200 stated that such rates would apply only when the commodities to be transported were released to a declared value not exceeding $2.50 per pound. Also, the same tender contained in Item 85 an "Exception," stating that the rates and provisions of the tender did not apply on aircraft engines. Aircraft engines were placed in a special tender which contained released value rates only. If we were to accept plaintiff's theory, these specific

* The dissenting opinion of SKELTON, Judge, in which NICHOLS, Judge, joins, follows the opinion of the Trial Commissioner which has been adopted by the court.

provisions in the tenders for released value rates would be both unnecessary and redundant. In view of these circumstances and the special nature of Section 22 Quotations, we conclude that the released value provisions of Item 187 in Tariff 2–G (or its counterpart in Tariff 2–H) did not apply to the shipments made under the tenders in these cases.

■ Finally, if we assume *arguendo* that the plaintiff's interpretation is reasonable, we would have to conclude, in the light of the discussion above, that the documents are unclear and subject to more than one reasonable interpretation. It is well settled that such ambiguities in tariffs are to be resolved against the carrier and in favor of the shipper. Bolin Drive-A-Way Co. v. United States, 283 F.2d 697, 151 Ct.Cl. 164 (1960); Hayes Freight Lines, Inc. v. United States, 163 Ct.Cl. 265 (1963), and Hughes Transp., Inc. v. United States, 169 Ct.Cl. 63 (1965).

■ As supplemented by the foregoing discussion, the court agrees with the Trial Commissioner's opinion and adopts his recommended conclusion as the basis for judgment in these cases. Plaintiff is not entitled to recover, and the petitions in both cases will be dismissed upon completion of the proceedings in these cases. Defendant is entitled to recover on its counterclaim in Case No. 210–68 and judgment is entered to that effect. The amount of the recovery will be determined pursuant to Rule 131(c).

## OPINION OF THE COMMISSIONER

WHITE, Commissioner:

The plaintiff, a Texas corporation, operates under certificates from the Interstate Commerce Commission authorizing the plaintiff to transport the types of commodities that are involved in the present litigation. In these cases, which were consolidated for trial purposes, the plaintiff sues to recover sums of money which the defendant withheld from amounts otherwise due the plaintiff for transportation services. The withhold-ings were based upon the defendant's view that the plaintiff was liable for the full amounts of the damages sustained by two shipments of the defendant while they were being transported by the plaintiff.

In Case No. 210–68, the defendant has filed a counterclaim against the plaintiff, alleging that it has not been fully compensated as yet for all the damage that was done to the particular shipment.

The plaintiff contends that under a released-value limitation in a tariff which the plaintiff had on file with the Interstate Commerce Commission, its maximum liability to the defendant in each case was limited to a figure arrived at by applying the formula of $250 per 100 pounds to the shipping package or loose article that was damaged in a particular shipment.

The legal question to be decided in each case is whether the released-value limitation previously mentioned was applicable to the damage that was done to the shipment involved in the particular case. The plaintiff argues that an affirmative answer to this question is required, while the defendant takes a contrary position.

It is my opinion that the defendant's position is the legally correct one.

As the factual and legal issues in the two cases are similar, the discussion in this opinion will relate only to the earlier of the two cases, No. 373–65.

On or about May 14, 1962, the defendant tendered to the plaintiff, for movement in the normal course of business, a trailer-mounted pulse acquisition radar unit (Model S/N 00107) and auxiliary parts, weighing 8,397 pounds. The shipment was in good condition when it was tendered to the carrier, but it was in a damaged condition when it was delivered to the consignee on May 16, 1962.

Because of the damage to the shipment mentioned in the preceding paragraph, the defendant deducted the sum of $7,557.87 from amounts otherwise due the plaintiff from the defendant for

transportation services. The plaintiff does not question the figure of $7,557.87 as accurately reflecting the damage that was done to the shipment, but the plaintiff contends that the deduction was excessive to the extent of $6,375.37 in view of the plaintiff's limited liability, and the recovery of the $6,375.37 is sought in Case No. 373–65.

The shipment in Case No. 373–65 moved under a standard-form government bill of lading, which had on its face the notation, "C & H 100 L EFF 11 Aug 61." This notation referred to Tender No. 100–L, ICC No. 38, which was captioned "Rate Quotation on U.S. Government Freight." Tender 100–L had been submitted by the plaintiff to various agencies of the defendant and had become effective in August 1961. It was still in effect when the shipment in Case No. 373–65 moved during May of 1962.

Tender No. 100–L was issued under the authority of Sections 22 and 217 of the Interstate Commerce Act, as amended (49 U.S.C. §§ 22, 317 (1958)), which permitted motor carriers to contract with the United States for transportation services either without charge or at rates less than those published and filed with the Interstate Commerce Commission.

Tender No. 100–L consisted of some 69 pages. It contained a schedule of specific commodity rates, a schedule of distance commodity rates, general rules and regulations on the application of the rates, rules and regulations governing accessorial services, and items describing in detail the scope of the operating rights of the plaintiff and its connecting carriers. None of the provisions of Tender 100–L stated that the rates quoted on radar equipment were contingent upon a declaration or release of value by the shipper.

However, Tender No. 100–L did contain the following statement as Item No. 130 under the heading of "General Rules and Regulations":

## REFERENCE TO GOVERNING TARIFFS

Except as otherwise provided herein, this tariff is governed by such rules and regulations, governing volume shipments, as are lawfully on file with the Interstate Commerce Commission.

At the time when the shipment in Case No. 373–65 moved during May of 1962, the plaintiff had its Local Joint Motor Freight Commodity Tariff No. 2–G, MF ICC No. 32, on file with the Interstate Commerce Commission. Item No. 187 of this tariff, as augmented by Supplement No. 18 effective September 25, 1961, was under the heading of "General Rules and Regulations" and quoted released-value rates on several commodities that required the use of special equipment, namely, "Airplanes, Airplane Engines; Missiles; Missile Components; and Electrical, Electronic, Radar, Sonar and Scientific Machines and Machinery." The item stated that the released value of such a commodity must be entered on the shipping order and bill of lading. It further provided that the rates were "to be applicable only when the value of the property as declared by the shipper in writing, or agreed upon in writing as the released value thereof is as follows," and then followed a rate that was applicable when a shipment was "Released to a value not exceeding $250 per 100 pounds," and a different rate that was applicable when a shipment was "Released to a value exceeding $250 per 100 pounds."

It appears to be the plaintiff's theory that Item No. 130 of Tender No. 100–L incorporated in the tender by reference all the rules and regulations which were contained in Tariff No. 2–G and were not duplicated in the tender; that Item No. 187 in Tariff 2–G was part of the tariff's rules and regulations; and therefore, that since Item 187 provided for the transportation of radar equipment only on the basis of released values, this limitation was necessarily incorporated in Tender 100–L.

The plaintiff overlooks the introductory phrase of Item No. 130 "Except as otherwise provided herein," which clearly indicated that it was not the intention of Item 130 to incorporate by reference in Tender No. 100–L any of the plaintiff's rules and regulations on file with the Interstate Commerce Commission which were inconsistent with the express provisions of the tender itself.

Item No. 187 of Tariff No. 2–G, although physically located under the heading of "General Rules and Regulations," was a rate provision. The plaintiff's pronouncement to the general public in Item 187 that it would transport radar equipment only on the basis of released values was an integral part of the rate-fixing scheme in Item 187.

Tender 100–L, on the other hand, had its own rate-fixing provisions, which were detailed, complete, and, therefore, exclusive. Consequently, there is no sound basis for concluding that Item 130 of the tender incorporated in the tender by reference any rate provision from Tariff 2–G, even though one such provision, Item 187, was set out in the "General Rules and Regulations" portion of the tariff.

It should be mentioned here that if the rate under Item No. 187 of Tariff No. 2–G for the shipment involved in Case No. 373–65 had been lower than the rate prescribed in Tender No. 100–L for such shipment, then the Item 187 rate, together with the ancillary released value limitation in that item, would have been applicable to the shipment. This would have been so in view of a standard condition which was contained in the government bill of lading covering this shipment and which stated as follows:

5. This shipment is made at the restricted or limited valuation specified in the tariff or classification at or under which the lowest rate is available, unless otherwise indicated on the face hereof.

The purpose of the quoted condition was to obtain for the Government the lowest available rate, even if the lowest rate was available only upon the basis of a released value. However condition 5 did not come into operation with respect to the shipment involved in Case No. 373–65 because the released-value rate quoted in Item No. 187 of Tariff No. 2–G ($6.91 per hundred pounds) was not lower that the rate quoted in Tender No. 100–L ($6.60 per hundred pounds) for this shipment.

In this connection, it was not necessarily incongruous for the plaintiff, without imposing any requirement regarding released values, to quote to the Government in Tender No. 100–L rates that were lower than those which the plaintiff offered to the general public in Item No. 187 of Tariff No. 2–G for similar transportation services, on the basis of released values only. Pertinent sections of the Interstate Commerce Act authorized the plaintiff and other carriers to offer the Government transportation services under arrangements that were different from, and more advantageous than, those offered to the general public.

It is concluded that the shipment in Case No. 373–65 did not move on the basis of a released value, and, accordingly, that the plaintiff is liable to the defendant for the full amount of the damage that was done to the shipment while it was being transported by the plaintiff.

A similar conclusion is required in connection with Case No. 210–68. In connection with this case, however, it should be stated that the rates on this shipment in Tender No. 100–M (which had superseded Tender 100–L) and in Item No. 235 of Tariff No. 2–H (which had superseded Item No. 187 of Tariff No. 2–G) were the same. This being so, the rate under Tender 100–M was more advantageous to the defendant than the rate under Item 235 of Tariff 2–H because the former was not conditioned upon any release of value. Thus, standard condition 5 of the bill of lading was inoperative in Case No. 210–68, as well as in Case No. 373–65.

For the reasons previously stated in this opinion, the plaintiff's petitions in the two cases should be dismissed, and judgment should be entered for the defendant on its counterclaim in Case No. 210–68. Since the record before the court does not establish the actual extent of the damage that was done to the shipment in Case No. 210–68, the amount of the defendant's recovery in that case must be determined in subsequent proceedings under Rule 131(c).

SKELTON, Judge (dissenting):

At the time the shipments were made in these cases the bills of lading referred to Tender No. 100–L and its counterpart Tender No. 100–M, ICC No. 38, which was captioned "Rate Quotation on U. S. Government Freight." This Tender consisted of 69 pages, containing a schedule of specific commodity rates, general rules and regulations on the application of the rates, rules and regulations governing accessorial services, a schedule of distance commodity rates, and items describing the operating rights of the plaintiff and its connecting carriers. Tenders 100–L and 100–M did not specifically state that the rates quoted on radar equipment were contingent upon a declaration or release of value by the shipper. However, in my opinion, this was accomplished by reference. Tenders 100–L and 100–M contained Item 130 under the caption of "General Rules and Regulations" which provided as follows:

## REFERENCE TO GOVERNING TARIFFS

Except as otherwise provided herein, this tariff is governed by such rules and regulations, governing volume shipments, as are lawfully on file with the Interstate Commerce Commission.

At the time these shipments moved, plaintiff had on file with the ICC its Local Joint Motor Freight Commodity Tariff No. 2–G and No. 2–H, respectively. Items Nos. 187 and 235, respectively, of these Tariffs, as amended by Supplement No. 18, contained released-value provisions on various commodities, which included "Electrical, Electronic, Radar, Sonar, and Scientific Machines and Machinery." This item provided that the released value of such a commodity must be shown on the bill of lading and shipping order.

Both Tenders 100–L and 100–M contained Item 150 which provided as follows:

Reference herein to other publications includes reference to supplements thereto and successive issues thereof.

Paragraph (b):

Reference herein to items on pages in this or other publications includes reference to successive issues of such items or pages in such publications and in supplements thereto and the successive issues thereof, and the numbers of such items or pages are also inclusive.

Item 105 in Tenders 100–L and 100–M also refers to plaintiff's tariffs published with the ICC.

In my opinion, Item 130, together with Item 150 and Item 105, incorporated in and made applicable to Tenders 100–L and 100–M, by reference, the provisions of Items 187 in the General Rules and Regulations of plaintiff's published Tariff 2–G, and Supplement 18, and Item 235 in the General Rules and Regulations of plaintiff's published Tariff 2–H. It was not necessary that these provisions be physically copied in the Tenders. Defendant agrees that this is not only proper, but also that it is done all the time, and that this is the purpose of Item 130.[1]

I do not agree that Items 187 and 235 of plaintiff's Tariffs 2–G and 2–H contained separate released value "rates." They were more in the nature of released value provisions which related to the base rates in the published tariffs and to the Tenders after they were incor-

1. See p. 11 of defendant's brief.

porated therein by reference. The defendant agrees that had the released value provisions been physically copied into Tenders 100–L and 100–M, the shipments would have moved under released valuations at the base rate specified in the Tenders. The same result should follow from the incorporation of the provisions by reference as was done here.

I would enter judgment for the plaintiff against defendant in Case No. 373–65 in the sum of $6,375.35 and in Case No. 210–68 in the sum of $109,773.52, and would deny recovery of defendant's counterclaim and dismiss the same.

NICHOLS, Judge, joins in the foregoing dissenting opinion.