Carriers; rates, fares and charges; tariff schedules; empty projectiles. — On May 28,1976 the court entered the following order:
Before Davis, Judge, Presiding, Laramore, Senior Judge, and Skelton, Judge.
“These companion cases come before the court on cross-motions for summary judgment, having been submitted without oral argument. The question is whether plaintiff, a common carrier by truck, is entitled to the class rate for certain transportation services for the Government or whether the charges are properly governed by lower Section 22 tenders. The items (empty projectiles) were shipped from the Twin Cities Army Ammunition Plant in Minnesota by other common carriers and were interlined or interchanged with plaintiff at various locations. Plaintiff carried the shipments from the interline or interchange points to Doyline, La., the final destination. In No. 253-73, defendant first paid at the class rates (at which plaintiff billed) but then deducted (from *683 amounts due on other bills) the excess over the Section 22 rate. In No. 419-73 plaintiff billed at the Section 22 rate but later sought the higher class rates which defendant refused to pay. Plaintiff is admittedly governed by the Section 22 tenders, offered by the originating carriers, if those tenders apply to these shipments.
“The Section 22 tenders covered the shipment of empty projectiles (or rocket heads) from New Brighton, Minnesota, to Doyline, Louisiana (one tender listed the originating point as ‘Minneapolis & St. Paul Minnesota & Commercial Zones’). The problem is created by the fact that the Twin Cities Army Ammunition Plant (the origin of all the shipments) lies only in lesser part within New Brighton, the main portion of the plant being outside but adjoining New Brighton. Construing these tenders, narrowly and literally, plaintiff says that for this reason they do not cover the shipments.
“We think, however, that the tenders must be construed to include these shipments. At the relevant times the mailing-address for the Twin Cities Army Ammunition Plant was New Brighton, it was partially located in New Brighton, and there was no other facility in that city which was a storage place for these projectiles or rocket heads or which could have been a point of origin for shipments of those items. The originating carriers which filed the tenders clearly intended them to apply on shipments from the Twin Cities Army Ammunition Plant, and the bills of lading recited the tenders as the rate authority. If plaintiff were right, the tenders would have no application to any shipment at all.
“The controlling principles are that for ‘Section 22 quotations, like other freight tariffs, the intent of the parties is controlling (Union Pacific R.R. v. United States, 193 Ct. Cl. 521, 529, 434 F. 2d 1341, 1345 (1970)), that a reasonable conr struction linked to the shipped article is to be preferred over an absurd, strained, unnatural or improbable reading (Trans Ocean Van Service v. United States, 192 Ct. Cl. 75, 91, 426 F. 2d 329, 336 (1970) ; Southern Pacific Trans. Co. v. United States, 197 Ct. Cl. 143, 151, 454 F. 2d 740, 745 (1972)), and that Section 22- ambiguities are resolved against the carrier (Hughes Trans. Co. v. United States, 169 Ct. Cl. 63, 68 *684 (1965)). Under those principles, the quotations involved here must be interpreted as covering the disputed shipments.*
“rr is therefore ordered that plaintiff’s motion for summary judgment is denied in both cases, the defendant’s cross-motion is granted, the petitions are dismissed and judgment is entered in favor of the defendant on its counterclaim in No. 258-78 in the amount of $6.30.”

There is no doubt that the Twin Cities Ammunition Plant was within the ^commercial zones” of Minneapolis and St. Paul and therefore that the one Section 22 quotation referring to that originating point applied to the shipment made under it.